727 So.2d 673 (1999)
STATE of Louisiana
v.
Kenneth WASHINGTON.
No. 98-KA-69.
Court of Appeal of Louisiana, Fifth Circuit.
January 26, 1999.
*674 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Ellen S. Fantaci, Caren Morgan, Assistant District Attorney, Gretna, Louisiana, Attorneys for Plaintiff/Appellee.
Bruce W. Harris, New Orleans, Louisiana, Attorney for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, JAMES L. CANNELLA and THOMAS F. DALEY.
GOTHARD, Judge.
The defendant, Kenneth Washington, was convicted of simple burglary in violation of La. R.S. 14:62, and he was sentenced to four years at hard labor, with credit for time served. Defendant appeals. We affirm the defendant's conviction and sentence.

FACTS
On or about February 9, 1997, a burglary occurred at the True Hope Church of God and Christ in Marrero.
At trial it was established that, around midnight on February 9, 1997, police received an anonymous call reporting that someone was coming in and out of the True Hope Church of God and Christ. The caller said that the man was dressed in a red jacket, blue jeans and a plaid shirt. When Deputy John Baptiste arrived on the scene, he saw a man in the field next to the church. As soon as the man saw the police car, he fell to the ground, however, when the deputy stopped his vehicle, the man got up and fled down Julie Street. Deputy Baptiste pursued *675 him on foot down Julie Street and across Betty Street. Deputy Olin Vinning also assisted in the pursuit, and they apprehended the defendant near his girlfriend, Linda Wickem's, residence. Deputy Baptiste testified that the defendant was wearing jeans and a plaid dark-colored shirt, but was not wearing a red jacket. Deputy Baptiste took the defendant back to the church, where he conducted a safety pat down and found wrapped peppermint candy in the defendant's pocket.
Deputy Baptiste further testified that, after returning to the church with the defendant, he entered the church. Inside the church he observed a piano with a footprint on it and testified that the burglar would have had to stand on the piano to remove the speaker that was tied to the ceiling. Deputy Baptiste compared the shoes that the defendant was wearing to the footprints and observed that they were a visual match.
At trial, Deputy Baptiste testified about the locations where property stolen from the church was recovered. A speaker was located behind the residence at 1601 Betty Street and another speaker was found behind Linda Wickem's residence at 1613 Betty Street. Still another speaker was recovered from the grass next to the church's parking lot. A red jacket was found stuffed in a cooler behind a residence on Julie Street, near where a fourth speaker was located.
Deputy Thelma Hill also responded to the incident and secured the church. In the front foyer of the church, she found the front glass door shattered. She saw an amplifier, some other musical equipment, and some other objects knocked over. She learned from the church's pastor, Reverend Walker, that the church's amplifiers, some musical equipment, and some candy that was kept behind the pulpit were missing.
During her investigation, she observed a footprint in the mud outside of the church's kitchen window. She, too, saw the footprint on the top of the church's piano. When the officers brought the defendant back to the church after he was topped, she compared the defendant's shoes with the prints and concluded that the impression in the ground and the one on the piano and another near the amplifier were all made by defendant's shoes. Defendant was formally arrested at the scene for simple burglary of the church.
At trial, Captain Merrill Boling of the Jefferson Parish Sheriff's Office Latent Print Division testified that he was unable to match the fingerprints taken at the scene to the defendant's, because the fingerprints from the scene did not contain enough points of identification for comparison.
Linda Wickem testified that she was the defendant's fiancee and that he lived with her at 1613 Betty Street. Deputy Craig Bonnette of the Jefferson Parish Sheriff's Office testified that he also responded to the scene, and that he took a statement from Linda Wickem on the night of the offense.
Defendant's mother, Barbara Washington, testified that Linda Wickem was the defendant's fiancee. Mrs. Washington also stated that she had never seen the defendant wearing a red jacket. The defendant did not testify.

ANALYSIS
Initially, we note that the state, in brief to this court, contends that defendant's appeal is untimely and should be dismissed. However, the record reflects that the defendant's motion for appeal was filed prior to the imposition of sentence and therefore was premature. A premature appeal need not be dismissed when a sentence is imposed after the defendant's motion for appeal is filed. See for example, State v. Conrad, 620 So.2d 366 (La.App. 5 Cir.1993) fn.1, writ granted in part on other grounds and remanded, 625 So.2d 158 (La.1993).
In his first allegation of error the defendant argues that the trial court erred in denying him a hearing on a motion to suppress evidence. Defendant further argues that there was prosecutorial misconduct when the district attorney informed the court and the defense counsel that there was not a basis for a motion to suppress.
The record reflects that defendant filed a generic motion to suppress evidence, confession, identification, and for a preliminary examination *676 and speedy trial. This motion came for hearing before the trial judge, at which time the prosecutor stated that "... there was no confession. There was no identification procedure. I don't see a basis for a motion to suppress evidence. If that becomes evident from if he thinks there's something that needs to be suppressed, he's going to have to tell me what that is ..." Thereafter, the court questioned the defense counsel, who indicated that he accepted the state's assertion that no motion to suppress was applicable. A preliminary examination was held, at which time the circumstances surrounding the recovery of the candy and candy wrappers were presented. Defendant lodged no further objection, and he did not reurge a motion to suppress at any time prior to trial.
We believe that defendant waived his right to have the motion to suppress considered. First, defendant did not allege facts in his motion to suppress as required by La. C.Cr.P. art. 703 E. Second, defendant indicated at the hearing that he was satisfied with the state's response to his motion to suppress. Finally, defendant proceeded to trial without raising any issue that he had an outstanding motion to suppress. State v. Williams, 97-1135 (La.App. 5 Cir. 5/27/98), 714 So.2d 258. Accordingly, we find no merit to defendant's first assignment of error.
In his second assignment of error, defendant alleges that the State failed to preserve and to introduce at trial the peppermint candy allegedly recovered from his person on the night of his arrest. Thus, he alleges that the state committed reversible error by failing to preserve evidence that would have assisted him in preparing a defense.
The record reflects that the defendant offered no contemporaneous objection to testimony concerning the peppermint candy at the trial, and therefore he did not preserve this issue for appellate review. La.C.Cr.P. art. 841.
Assuming arguendo that this issue is properly before us, when a defendant claims that the state failed to preserve potentially useful evidence, such failure does not constitute denial of due process unless the defendant can show that the state acted in bad faith. Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); State v. Trahan, 576 So.2d 1 (La.1990). Defendant makes no allegation of bad faith on the part of the State.
In his third allegation of error, defendant alleges that the trial court erred in allowing impermissible hearsay into evidence. He contends that the trial judge improperly allowed Deputy Bonnette to testify about a statement made by Linda Wickem because it was inadmissible hearsay. The state responds that the trial judge properly allowed the deputy's testimony about the statement because his testimony was admissible to impeach Ms. Wickem's trial testimony that was inconsistent with her prior statement.
At the trial of this matter, Ms. Wickem testified that on the day of the incident she and the defendant were together all day. She denied telling the police that she did not want anything to do with the defendant. Instead, Ms. Wickem maintained that she had told the police that she was defendant's fiancee. Ms. Wickem conceded that she had given the police a written statement shortly after the incident and admitted that she had read the statement and then signed it. After being shown the statement, she testified that she could not explain why the written statement indicated that she told the officer that she "used to go out" with the defendant. She also testified that she did not tell the police that the defendant owned a red jacket, and she denied telling the police that she had told the defendant that she did not want to have anything to do with him, because he had been in a fight that night and was drunk.
When questioned by defense counsel about her statement, Ms. Wickem testified that the question about the red jacket was not on the statement when she reviewed and signed it. She testified at trial that she saw the defendant at a bar on the night of the incident and that he was still at the bar when she went home. Later, she heard a noise outside of her house. When she looked out of the window, she saw two police officers in the field on Julie Street. She went outside and *677 also saw the defendant with the officers. She went to change her clothes, and she saw that the police officers were at the church. She went over to the church and gave an officer a statement that he wrote down. At that time, she read the statement and signed it, and that there was nothing in the statement about a red jacket when she reviewed it.
To impeach Ms. Wickem's trial testimony, the state called Deputy Bonnette, the officer who had taken Ms. Wickem's statement. Deputy Bonnette testified that Ms. Wickem told him that the defendant had come to her home about twenty minutes earlier and she had noticed that he was out of breath and had grass in his hair. Deputy Bonnette testified that Ms. Wickem told him that she did not let the defendant into her house because he was intoxicated and because he said that he had been in a fight. Deputy Bonnette testified that Ms. Wickem told him that the defendant had been her boyfriend, but that they had broken up. According to the officer, Ms. Wickem never told him that the defendant was her fiance. He testified that the defendant owned a red jacket and also that she told him the defendant was wearing brown pants and a plaid shirt with brown in it.
Generally, an out-of-court statement, such as the one made by Ms. Wickem is inadmissible as hearsay. La. C.E. arts. 801(C) and 802. However, La. C.E. 607(A) allows the credibility of a witness to be attacked by any party, including the party calling the witness. La. C.E. art. 607 D(2) permits the introduction of a prior inconsistent statement, even though it is inadmissible hearsay, for the limited purpose of attacking the credibility of a witness. State v. Cousin, 96-2973, p. 7 (La.4/14/98), 710 So.2d 1065, 1069. A prior inconsistent statement by a witness that incriminates the defendant is admissible only on the issue of credibility of the witness, and not as substantive evidence of the defendant's guilt. State v. Cousin, supra; State v. Mayeux, 94-105, p. 9 (La.6/28/94), 639 So.2d 828.
Here, Deputy Bonnette's testimony concerning Ms. Wickem's prior statement was properly admitted to impeach Ms. Wickem's trial testimony. Ms. Wickem did not merely deny making the prior statement; she also gave testimony that was affirmatively damaging to the prosecution's case, and the prosecutor could use her prior inconsistent statement for impeachment. Accordingly, we find no error to defendant's allegation of error.
In his last allegation of error, defendant contends that the trial court committed reversible error in denying his motion for new trial on the grounds of newly discovered evidence. He reurges the substance of his claims in assignments one and two and argues that the police should have been precluded from testifying at trial about the peppermint candy because a hearing on the motion to suppress the candy should have been held.
According to La.C.Cr.P. art. 851, the motion for a new trial is based on the supposition that injustice has been done to the defendant, and unless such injustice is shown, the new trial motion shall be denied no matter upon what allegations the motion is grounded. The ruling on a motion for a new trial is committed to the sound discretion of the trial judge and will be disturbed on appeal only when there is a clear showing of an abuse of that discretion. State v. Griffon, 448 So.2d 1287, 1293 (La.1984); State v. Battle, 93-900 (La.App. 5 Cir. 3/29/94), 635 So.2d 337, 342, writ denied, 94-1592 (La.10/28/94), 644 So.2d 649.
Defendant's allegations have been previously reviewed and defendant has presented nothing new for us to review in this assignment of error. We see no abuse of discretion in the trial court's refusal to grant a new trial. State v. McCorkle, 97-966 (La.App. 5 Cir. 2/25/98), 708 So.2d 1212.
We have reviewed the record for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and find no errors patent in this case.
For the above discussed reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.