858 So.2d 35 (2003)
STATE of Louisiana
v.
Ronnie M. LYLES.
No. 03-KA-141.
Court of Appeal of Louisiana, Fifth Circuit.
September 16, 2003.
*40 Ferdinand J. Kleppner, Metairie, LA, for Appellant.
Ronnie M. Lyles, Angie, LA, Defendant In Proper Person.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long, Joseph T. Oubre, Amanda Calogero, Assistant District Attorneys, Gretna, LA, for Appellee.
*41 Panel composed of Judges JAMES L. CANNELLA, WALTER J. ROTHSCHILD and EMILE ST.PIERRE, Pro Tempore.
JAMES L. CANNELLA, Judge.
Defendant, Ronnie Lyles, appeals from his convictions on two counts of indecent behavior with a juvenile and respective imprisonment at hard labor sentences to six years on count two and, as a fourth felony offender, to 20 years without benefit of probation or suspension of sentence. For the reasons which follow, we affirm the convictions and sentences and remand.
On September 20, 2000, the Jefferson Parish District Attorney's Office filed a bill of information charging the Defendant with two counts of indecent behavior with a juvenile in violation of La. R.S. 14:81. The Defendant was arraigned and entered pleas of not guilty. On March 14, 2001, immediately prior to trial, the dates of the offenses on the bill of information were amended. The Defendant's previously filed motions to quash the indictment and to sever the offenses were heard and denied. Additionally, the Defendant made two oral motions in limine, urging the exclusion of a portion of one victim's statement and the exclusion of a portion of the arresting officer's testimony, which were heard and denied. Finally, an oral motion by the Defendant to allow both the original bill of information and the amended bill of information to be read to the jury was heard and denied. The case then proceeded to a jury trial.
After a two day trial, a six-person jury unanimously found the Defendant guilty as charged on both counts. The Defendant filed a motion for new trial, which was heard and denied on May 9, 2001. Immediately following the denial of the motion for new trial, the Defendant was sentenced on each count to concurrent six year imprisonment sentences at hard labor.
Also on May 9, 2001, the State filed a habitual offender bill of information against the Defendant alleging that he was a fourth felony offender relative to count one. The Defendant denied the allegations in the habitual offender bill of information and filed objections. On July 9, 2001, the Defendant filed supplemental objections and a motion to quash. On October 11, 2001, the Defendant's motion to quash was heard and a hearing on the habitual offender bill was held. Both matters were taken under advisement and, on July 10, 2002, the Defendant was found to be a fourth felony offender. After he waived delays, the Defendant's original sentence on count one was vacated and he was sentenced to 20 years imprisonment at hard labor, without benefit of probation or suspension of sentence. On July 16, 2002, the Defendant filed a motion for appeal which was granted.
At trial, Z.H., the mother of the victim, B.H., testified that B.H. is her 11 year old daughter and, the other victim, L.W., is her 14 year old niece, who resides with her in New Orleans.[1] Z.H. testified that she was informed of allegations of sexual abuse by her daughter, B.H. After watching a movie concerning sexual abuse, B.H. hesitantly told her that the Defendant, who at the time was dating Z.H.'s sister, Paula, made her touch his private part and kissed her. B.H. stated that the incident occurred in Paula's room at the family house in Westwego where family parties were often held. B.H. informed her that, during Christmas break, when she was in the *42 fourth grade, she and her cousins were watching television while the Defendant painted their toenails. B.H. told Z.H. that the Defendant placed her hand on his "private part" and kissed her. Z.H. then asked L.W. if she needed to tell her anything, but L.W. did not disclose what had happened to her at that time. The day after B.H.'s disclosure, Z.H. telephoned the police and made a complaint against the Defendant.
Detective Larry Dyess of the Jefferson Parish Sheriff's Office's (JPSO) Personal Violence Unit testified that, on July 18, 2000, a report was filed involving two victims, B.H. and L.W. On July 24, 2000, Detective Dyess contacted the reporting person, Z.H., and scheduled an interview with the victims at the Children's Advocacy Center. Detective Dyess first spoke with Z.H. regarding the information she received from B.H. and L.W. The detective then spoke briefly with the victims. The victims next met with the center's forensic interviewer.
Detective Dyess was questioned at trial about the portion of his report detailing his interview with Z.H. The report reflected that L.W. informed Z.H. that the Defendant had put his hand on her "stuff" and put his finger inside of her. Nothing in the report indicated that the Defendant ever kissed or attempted to kiss L.W., nor did Detective Dyess recall L.W. disclosing that to him. Detective Dyess was also questioned about his testimony at a preliminary hearing that both victims were together with the Defendant when the crime occurred and that the Defendant was helping them paint their toenails. Detective Dyess was told that the incidents occurred in 1998 or 1999 and the time was not further specified.
Omalee Gordon (Gordon) of the Gretna Police Department testified that she was assigned to the Jefferson Parish Children's Advocacy Center to conduct forensic interviews with children. Gordon testified that, on August 8, 2000, she interviewed both B.H. and L.W. at the center. L.W. told her that the Defendant put his tongue in her mouth and put his hand on her private part, and that B.H. said the Defendant put his tongue in her mouth and put her hand on his private part. Gordon testified that she did not question the victims about any family members or review any therapy or school reports. She also did not recall if the victims informed her of the specific time the incidents occurred.
L.W., the fourteen year old victim, testified that she was interviewed at the Jefferson Parish Children's Advocacy Center. A video tape of the interview was played for the jury. In conformity with her videotaped statement, L.W. testified that she was at the family home in Westwego in her Aunt Paula's room watching television with her cousin when the Defendant walked into the room. The Defendant sat on the bed next to her. When her cousin went to the bathroom, the Defendant put his hand on her "privacy part." L.W. told the Defendant to stop but he did not do so immediately. L.W. testified that she did not tell anyone at the time of the incident because she was scared.
L.W. further testified that, on another occasion, she was playing hide-and-go-seek with her cousins and hiding in the garage, when the Defendant walked into the garage looking for her. When the Defendant found her, he kissed her, putting his tongue into her mouth. L.W. told him to stop and the Defendant left the garage. L.W. also testified that, on one occasion, the Defendant walked out of the bathroom with a towel partially covering him and that she could see his "private parts." The Defendant asked her a question, stated he was going to get dressed, and went downstairs.
*43 L.W. testified that she never told anyone what happened until after watching a movie with B.H. and Z.H. B.H. told L.W. that she was scared to sleep and that she had a secret concerning herself and the Defendant. L.W. then told B.H. that the Defendant had done something to her. L.W. eventually told Z.H. about the incidents concerning the Defendant. L.W. testified that she was not sure exactly when the incidents occurred but that she was in the fifth grade.
The second victim, B.H., testified that she had also been interviewed at the Jefferson Parish Children's Advocacy Center. The videotaped interview was played for the jury. Thereafter, B.H. testified that the incident involving the Defendant occurred at the family home in Westwego during Christmas holidays. B.H. testified that, when she was in the fourth or fifth grade, she and some of her cousins were in her Aunt Paula's room watching television and having their toenails polished. The Defendant, who was also on the bed, took her hand and made her touch his "private." The Defendant then kissed her, putting his tongue into her mouth. B.H. testified that she did not tell anyone what happened because she was afraid. However, at some point, she told L.W. and Z.H. about the incident. B.H. further testified that when she told L.W. what had happened to her, L.W. told her that the Defendant had done something to her, too.
Additionally, S.W., the mother of L.W., testified that L.W. lives with Z.H. in order to attend a school in that district. S.W. testified that L.W. did not tell her anything concerning the Defendant or any inappropriate touching and that she knew little about the case.
In his appeal, the Defendant assigns ten trial court errors.[2]
ASSIGNMENT OF ERROR NUMBER ONE
The Defendant argues that the trial court erred in permitting the State to allege only the period of one year, without further specification, within which the crimes allegedly occurred and in denying his Motion to Quash. The Defendant argues that the trial court erred in refusing to require the State to narrow its claims as to when the crimes were committed, because it hampered his ability to establish his precise whereabouts during times when the crimes were alleged.
The State responds that it is not required to specify the exact dates for alleged offenses of indecent behavior with juveniles and, under La.C.Cr.P. art. 468, the lack of exact dates does not render the bill of information insufficient. Further, the State contends that the Defendant was presented with all available information in its possession concerning the dates of the offenses.
Article 468 of the Louisiana Code of Criminal Procedure provides as follows:
The date or time of the commission of the offense need not be alleged in the indictment, unless the date or time is essential to the offense.
If the date or time is not essential to the offense, an indictment shall not be held insufficient if it does not state the proper date or time, or if it states the *44 offense to have been committed on a day subsequent to the finding of the indictment, or on an impossible day.
All allegations of the indictment and bill of particulars shall be considered as referring to the same date or time, unless otherwise stated.
The date and time of the offenses are not essential elements of the offense of indecent behavior with a juvenile and, therefore, a bill of information which does not reflect the date and time of the offense is not insufficient. La.C.Cr.P. art. 468; State v. Case, 357 So.2d 498 (1978); State v. Mickens, 31,737 (La.App. 2nd Cir.3/31/99), 731 So.2d 463, 468. Furthermore, the victims prior to and during trial were unable to specify an exact period of time in which the offenses occurred. Therefore, the State could not have particularized the dates of the offenses regardless of the Defendant's request.
Because date and time are not essential elements of the offense of indecent behavior with a juvenile, we find that the trial court did not err in denying the Defendant's motion to quash the bill of information for lack of specificity. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER TWO
The Defendant argues that the trial court erred in refusing to sever the two counts of the bill of information. The Defendant argues that the offenses were remote from each other in time and had the two counts not been tried together, it is likely that he would not have been convicted.
The State responds that severance of the offenses was not required and that the testimony was presented in a logical and concise manner. It was highly improbable that the jury was confused by the two separate counts.
La.C.Cr.P. art. 493 provides:
Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
In the present case, the two counts, although perpetrated upon different victims and at different times, occurred at the same location, and under similar circumstances. Consequently, we find that the counts are of the same or similar character as contemplated by La.C.Cr.P. art. 493 and were, therefore, properly charged in the same bill of information.
The Defendant, nevertheless, contends that the two counts should have been severed to prevent prejudice.
La.C.Cr.P. art. 495.1 provides for severance of joined offenses, and states:
If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.
It is well settled that a defendant has a substantial burden of proof when he alleges prejudicial joinder of offenses. State v. Machon, 410 So.2d 1065 (La.1982); State v. Every, 96-185 (La.App. 5th Cir.7/30/96), 678 So.2d 952, 958. Motions to sever under La.C.Cr.P. art. 495.1 are *45 left to the sound discretion of the trial court and should not be disturbed on appeal in the absence of an abuse of discretion. State v. Celestine, 452 So.2d 676 (La.1984); State v. Every, 678 So.2d at 958.
In determining whether prejudice may result from a joinder of offenses, a trial court should consider whether the jury would be confused by the various counts, whether the jury would be able to segregate the various charges and evidence, whether the defendant would be confounded in presenting his various defenses, whether the crimes charged would be used by the jury to infer a criminal disposition, and whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile. State v. Washington, 386 So.2d 1368 (La.1980); State v. Every, 678 So.2d at 958.
The Defendant herein offered no evidence at the hearing on the motion to sever and does not argue here that the joinder of the offenses confused the jury or confounded his defense. Rather, the Defendant contends that, by trying the two counts together, a "spill over" or "tainting" effect occurred, causing the jury to infer a criminal disposition. The Defendant argues that if the counts had been severed, he would likely have been found not guilty on the count involving L.W., due to the contradictory accounts of the incident.
In determining whether two charged offenses should be severed for trial, the trial court may consider whether evidence of one offense would have been admissible as other crimes evidence at the trial of the other offense under State v. Prieur, 277 So.2d 126 (La.1973) and La. C.E. art. 404(B)(1). State v. Lewis, 97-2854 (La.App. 4th Cir.5/19/99), 736 So.2d 1004, 1015, writs denied, 99-2694 (La.3/17/00), 756 So.2d 325 and 01-3348 (La.2/01/02), 808 So.2d 345. Following the pronouncements by the Louisiana Supreme Court in State v. Jackson, 625 So.2d 146 (La.1993) and State v. Miller, 98-0301 (La.9/9/98), 718 So.2d 960, we find, that the evidence of each crime in the instant case would have been admissible at the trial of the other. Indecent behavior with a juvenile is a specific intent crime. See, State v. Blanchard, 00-1147 (La.4/20/01), 786 So.2d 701, 705. "Where the element of intent is regarded as an essential ingredient of the crime charged, it is proper to admit proof of similar but disconnected crimes to show the intent with which the act charged was committed." State v. Miller, 718 So.2d at 964; State v. Jackson, 625 So.2d at 150. Based on the above, we find that the evidence of the offense committed against either victim could have been introduced at the trial of the offenses committed against the other to establish the Defendant's specific intent.[3]
Therefore, we find no error in the trial court action denying the Defendant's motion to sever the two offenses for trial. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER THREE
The Defendant argues that the trial court erred in refusing to exclude evidence that he appeared before the victim with a towel wrapped around him. The Defendant contends that the evidence was provocative and inflammatory. The Defendant also contends that such evidence should not have been admitted without a Prieur hearing.
*46 The State responds that, even if the incident constituted improper evidence of "other crimes," the Defendant is not entitled to relief because such evidence was harmless error.
Prior to trial, the Defendant filed a motion in limine to exclude a portion of L.W.'s testimony recounting a portion of her taped interview regarding an occasion when the Defendant allegedly walked out of the bathroom with a towel wrapped around him and his "private part" was exposed. The motion was denied and L.W. testified at trial that once the Defendant walked out of the shower wearing a towel with his "private part" exposed, asked her a question, and left the room.
On appeal, an improper reference to other crimes is subject to harmless error review. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 101-102; State v. Thomas, 96-464 (La.App. 5th Cir. 11/14/96), 685 So.2d 261, 263-264. The test for determining harmless error is whether the verdict actually rendered in that case was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); State v. Pittman, 95-382 (La.App. 5th Cir.10/1/96), 683 So.2d 748, 758.
Here, both victims testified that the Defendant kissed them using his tongue and engaged in inappropriate contact with them. These are the offenses with which the Defendant was charged and convicted. Based upon the victims' testimony, it is clear that the evidence supported the Defendant's convictions for indecent behavior with a juvenile. Thus, we find that the introduction of the evidence of the "other acts", while improper, did not attribute to the verdict and was harmless. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER FOUR
The Defendant argues that the trial court erred in admitting evidence of the location of the Defendant's arrest and in refusing to exclude evidence that he was arrested while staying at a motel. The Defendant contends that the evidence created an improper inference that the Defendant was running or hiding. The State responds that the evidence was relevant to establish the Defendant's consciousness of guilt because he was not registered at the hotel under his own name.
At trial, Sergeant Wine testified that, after learning that the Defendant was possibly located at the Bon Soir Motel, he proceeded to that location. Upon his arrival, he ascertained that no one under the name of Lyles was registered at the motel. The officer was then informed by the complainants that the Defendant had used someone else's identification to register at the motel and that he was staying in a specific room. Sergeant Wine then knocked on the door to that room and the Defendant answered and admitted his identity.
The Louisiana Supreme Court has recognized that using a false name may be indicative of consciousness of guilt. State v. Toups, XXXX-XXXX (La.10/15/02), 833 So.2d 910, 913-914 (citing, State v. Wade, 33,121 (La.App. 2nd Cir.5/15/00), 758 So.2d 987, 991).
To rebut this inference, however, defense counsel had the opportunity to elicit testimony on cross-examination which could have explained the Defendant's presence at the motel. At trial, defense counsel asked Sergeant Wine whether it would be unusual for the Defendant, who was from Mississippi, to be staying at a motel while in Louisiana, to which Sergeant Wine responded that it would not. Additionally, Sergeant Wine testified on cross examination *47 that when he knocked on the Defendant's motel room door, the Defendant answered the door and, when the officer asked him for his name, he identified himself as Ronnie Lyles.
Considering the above, we find that the evidence that the Defendant was arrested at the Bon Soir Motel was relevant and not erroneously admitted. Any adverse inferences were explained in cross examination. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER FIVE
The Defendant argues that the trial court erred in refusing to permit the jury to review both bills of information which had been filed by the State and which alleged different and contradictory dates of the alleged crimes. The Defendant claims that both the original and amended bills of information, which contained different dates of the same offenses, should have been presented to the jury. The Defendant contends that the evidence of the date change was significant considering L.W.'s propensity for lying. Additionally, the Defendant claims that the change in dates constituted potentially exculpatory evidence of which the jury should have been made aware.
The State responds that the trial court was correct in denying the Defendant's motion, noting that the amendment was necessitated simply because of a typographical error.
All relevant evidence is admissible, except as otherwise provided by law. La. C.E. art. 402. Louisiana Code of Evidence article 401 provides that "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, risk of misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403; See, State v. Mosby, 595 So.2d 1135, 1138 (La.1992). Absent a clear abuse of discretion, the trial judge's determinations concerning relevancy and admissibility should not be overturned. State v. Vaughn, 431 So.2d 358, 361 (La.1982); State v. Dickerson, 01-1287 (La.App. 5th Cir.6/26/02), 822 So.2d 849, 858, writ denied, 02-2108 (La.2/21/03), 837 So.2d 627.
In State v. Dickerson, supra, this Court was presented with facts much like those in the instant case. In Dickerson, the defendant was charged with the aggravated rape of a five year old girl. Prior to trial, the State amended the indictment, changing the dates of the offenses. The defendant argued that he should have been allowed to present evidence to the jury showing that the state had amended the dates of occurrence on the indictment. This Court, in concluding that the trial court did not err in refusing to permit the defendant to introduce a copy of the amended indictment, noted that the indictment was irrelevant and, therefore, inadmissible, because the amendment had no relation to the issues the jury had to resolve. This Court further found that the defendant was not prejudiced by his inability to introduce the amended indictment because he was able to question witnesses concerning the dates.
Here, as in Dickerson, the amendment to the bill of information was irrelevant to the issues that the jury had to resolve and, therefore, inadmissible, because dates and times are not essential elements of the offense of indecent behavior with a juvenile. Furthermore, as in Dickerson, the Defendant was able to and did question *48 numerous witnesses concerning the dates when the offenses occurred.
Based on the above, we find that the trial court did not err in refusing to permit the Defendant to introduce a copy of the original and amended bills of information. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER SIX
The Defendant argues that the trial court erred in allowing the alleged victims/witnesses to remain in the courtroom and observe the video tapes of their prior statements while they were shown to the jury. The Defendant does not dispute that the videotaped interviews were properly admitted under La. R.S. 15:440.5, however, he argues that the provisions of La. R.S. 15:440.5 do not negate the dictates of La. C.E. art. 612, which permits the use of a recording only to refresh the memory of a witness.
The State responds that the videotapes were properly introduced under La. R.S. 15:440.5 and that it was not error to allow the victims to remain in the courtroom while the tapes were played.
The videotaped interviews in the instant case were not introduced under the provisions of La. C.E. art. 612 but, rather, under La. R.S. 15:440.5, which permits the State to introduce the videotape of the oral statement of the child made prior to the commencement of trial if certain conditions are met. La. R.S. 15:440.5(A). The statute further provides that "[t]he admission into evidence of the videotape of a child as authorized herein shall not preclude the prosecution from calling the child as a witness or taking the child's testimony outside of the courtroom as authorized in R.S. 15:283...." La. R.S. 15:440.5(B).
Based on La. R.S. 15:440.5, we find that the videotaped interviews were admissible at trial and that their introduction into evidence did not prevent the victims from testifying at trial.
In reference to the Defendant's contention that it was error to allow the victims to remain in the courtroom while the videotapes were played prior to their testimony, La. C.E. art. 615 provides in pertinent part:
A. As a matter of right. On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion.
B. Exceptions. This Article does not authorize exclusion of any of the following:
. . . .
(4) The victim of the offense or the family of the victim.
Because B.H. and L.W. were victims in the instant case, they were not subject to sequestration under La. C.E. art. 615. Accordingly, we find no error in the trial court action allowing the victims to remain in the courtroom during the playing of the videotapes. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER SEVEN
The Defendant argues that the trial court erred in sending into the jury room during deliberations a diagram made by a witness while testifying during the trial. The Defendant contends that the trial court erred in allowing the jury to view, during jury deliberations, a diagram drawn by victim, B.H. The Defendant also contends that allowing the jury to view the diagram during deliberations was not *49 harmless error. The State responds that the diagram was not evidence of written testimony and, even if it was, its introduction was harmless.
B.H. drew a diagram during her trial testimony, depicting the layout of the room in which the offense occurred, and the location of other individuals in the room, including the Defendant. The diagram was marked Exhibit 3 for identification and received into evidence without objection. During jury deliberations, the jury requested the diagram for review. Over a defense objection, the trial court ruled that the jury could view the diagram.
At the time of trial, La.C.Cr.P. art. 793 stated in pertinent part:
A juror must rely upon his memory in reaching a verdict. He shall not be permitted to refer to notes or to have access to any written evidence. Testimony shall not be repeated to the jury. Upon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict.
The general rule is that the jury is not to inspect written evidence except for the sole purpose of a physical examination of the document itself to determine an issue which does not require the examination of the verbal contents of the document. State v. Perkins, 423 So.2d 1103, 1109-1110 (La.1982). A jury can examine a written statement to ascertain or compare a signature or to see or feel it with regard to its actual existence, but not to examine its verbal contents. Id.
The State argues that the drawing is similar to a photograph and as such is not "written" evidence of "testimony" within the meaning of La.C.Cr.P. art. 793. However, unlike a photograph, which is a reproduction of a physical object or scene, the diagram in the instant case was drawn by a witness/victim in conjunction with her testimony. The jury's viewing of the diagram was for its verbal contents, i.e., B.H.'s testimony regarding the description of the room and its occupants. Therefore, we find that the trial court erred in allowing the jury to view the diagram. Next, we consider whether said error was harmless.
The diagram indicated where the offense had occurred and who was present in the room, but did not depict what occurred or any other significant fact. See, State v. Calloway, 00-1230 (La.App. 5th Cir.2/28/01), 781 So.2d 849, 853 (which found that allowing a jury in deliberations to view a map of a crime scene which was written on by a witness was harmless error). It did not bear directly on an element of the crime. Here, the evidence of each element of the offenses was clear. Therefore, we do not find that the jury's erroneous review of the diagram during deliberations contributed to their verdict and the error was harmless. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER EIGHT
The Defendant argues that the trial court erred in denying his motion for a new trial because the verdict was contrary to the law and evidence. The Defendant also argues that newly admitted evidence at the hearing on the motion for new trial established that a principal prosecuting witness had lied.
The State counters that the trial court did not err in denying the Defendant's motion, noting that the evidence at trial established the Defendant's guilt beyond a reasonable doubt and the newly discovered *50 evidence was not sufficient to warrant a new trial.
Sufficiency of the Evidence[4]
On April 10, 2001, the Defendant filed a written motion for new trial alleging that the verdict was contrary to the law and evidence and that the trial court erred in denying several pretrial motions. The denial of a defendant's motion for new trial, based on La. C.Cr.P. art. 851(1), presents nothing for review on appeal. State v. Hampton, 98-0331 (La.4/23/99), 750 So.2d 867. However, the Louisiana Supreme Court and this Court have addressed the constitutional issue of sufficiency of the evidence under such circumstances. See, State v. Hampton, supra, and State v. Pascual, 98-1052 (La.App. 5th Cir.3/30/99), 735 So.2d 98. Therefore, we will address it herein.
The standard for appellate review of the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560. A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. State v. Silman, 95-0154 (La.11/27/95), 663 So.2d 27, 35. A reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the Jackson standard of review. State v. Bordenave, 95-2328 (La.4/26/96), 678 So.2d 19, 20 (quoting Jackson, 443 U.S. at 319, 99 S.Ct. at 2789). It is not the function of an appellate court to assess credibility or reweigh the evidence. Appellate review for minimal constitutional sufficiency of evidence is a limited one, restricted by the standard developed in Jackson, State v. Rosiere, 488 So.2d 965, 968 (La.1986) and the cases cited therein.
La. R.S. 14:81 provides in part that
Indecent behavior with juveniles is the commission of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person. Lack of knowledge of the child's age shall not be a defense.
To convict a defendant of this offense, the State must prove that (1) there was an age difference of greater than two years between the accused and the victim, who was not yet seventeen, (2) the accused committed a lewd or lascivious act upon the person or in the presence of a child, and (3) the accused intended to arouse or gratify either his own or the victim's sexual desires. State v. Stec, 99-633 (La.App. 5th Cir.11/30/99), 749 So.2d 784, 787. Specific intent is a state of mind and, as such, need not be proven as a fact, but may be inferred from the circumstances and actions of the accused. State v. Harris, 99-1288 (La.App. 5th Cir.1/24/01), 782 So.2d 1055, 1059. Further, victim testimony alone can be sufficient *51 to establish the elements of a sexual offense, even where the State does not introduce medical, scientific, or physical evidence to prove the commission of the crime. State v. Hotoph, 99-243 (La.App. 5th Cir.11/10/99), 750 So.2d 1036, 1045.
The evidence in this case established that the two victims were under the age of seventeen and that there was an age difference of greater than two years between the victims and the Defendant. B.H. testified that when she was eight or nine years old, Defendant took her hand, placed it on his "private," and moved her hand on top of his "private." The Defendant then kissed her, putting his tongue in her mouth. Likewise, L.W. testified that, when she was in fifth grade, Defendant touched her "privacy part" in the front between her legs and moved his hand up and down. L.W. testified that, on a separate occasion, when she was playing hide and seek with her cousins, the Defendant found her in the garage and kissed her, putting his tongue in her mouth.
Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found, beyond a reasonable doubt, that the Defendant committed two counts of indecent behavior with a juvenile.
At the May 9, 2001 hearing on the Motion for New Trial, the Defendant sought to orally supplement his motion to introduce newly discovered evidence pursuant to La.C.Cr.P. art. 851(3). Although the supplemental motion was not written as required by La.C.Cr.P. art. 852, the trial court heard the newly discovered testimony.
Under La.C.Cr.P. art. 851(3), a defendant must establish the following four elements to obtain a grant of a new trial: (1) that the new evidence was discovered after trial; (2) that defendant's failure to discover the evidence before trial was not attributable to his lack of diligence; (3) that the evidence is material to the issues at trial; and (4) that the evidence is of such a nature that it would probably produce a different verdict in the event of retrial.
In reviewing the denial of a new trial based on newly discovered evidence, this Court has noted that, "the motion for new trial is based upon the supposition that injustice has been done to defendant, and unless such injustice is shown, the new trial motion shall be denied no matter upon what allegations the motion is grounded." State v. Washington, 98-69 (La.App. 5th Cir.1/26/99), 727 So.2d 673, 677. This court has further held that the trial court's determination of the merits of the motion for new trial will be disturbed only for an abuse of the court's discretion. Id.
At the hearing on the motion for new trial, Paula Pearson (Pearson), the Defendant's ex-girlfriend and the victims' aunt, testified that she contacted defense counsel shortly after trial indicating that she had information regarding the Defendant's case. Pearson testified that she believed that L.W. may have changed her story based on information received from her sister, Kiana. However, she had no personal knowledge that L.W. had done so.
Additionally, the defense called Ernest Pearson (Ernest), Paula's son, to testify. He stated that, on one occasion while he was talking on the telephone to his girlfriend, he overheard a conversation between Z.H. and his Aunt Kiana regarding L.W. changing her statement. Ernest testified that he did not speak to either victim about the incidents.
After Ernest testified, Z.H. was called by the State and testified that the conversation which Ernest overheard involved her telling Kiana that she thought L.W. had changed her story. However, Z.H. *52 explained that her feeling that L.W. changed her story was the result of a misunderstanding. Z.H. testified that, when L.W. told her that the Defendant had been "playing with her," she initially thought that L.W. meant inside her panties, but L.W. later stated that it was on the outside of her panties. Z.H. also testified that she never thought L.W. was not telling the truth about the incident.
In the instant case, we do not find that the introduction of the newly discovered evidence would lead the jury to reach a different result because the testimony of Z.H. adequately explained the reasons she earlier believed that L.W. had changed her story. Further, we find that the newly discovered testimony was only introduced to challenge the credibility of L.W. Newly discovered evidence affecting only a witness' credibility "ordinarily will not support a motion for a new trial, because new evidence which is `merely cumulative or impeaching' is not, according to the often-repeated statement of the courts, an adequate basis for the grant of a new trial." Mesarosh v. United States, 352 U.S. 1, 9, 77 S.Ct. 1, 5, 1 L.Ed.2d 1 (1956); State v. Cavalier, 96-3052 (La.10/31/97), 701 So.2d 949, 951.
Based upon the above, we find no error in the trial court ruling denying Defendant's motion for new trial. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER NINE
The Defendant argues that the trial court erred in sentencing him as a fourth felony offender and in refusing to quash all or portions of the Multiple Offender (Quad) Bill of Information because of defects in the predicate convictions alleged by the State.[5]
The State responds that the testimony and the prior convictions introduced at the multiple offender hearing were sufficient to support the trial court's finding that the Defendant was a four time felony offender.
In State v. Hollins, 98-768 (La.App. 5th Cir.9/1/99), 742 So.2d 671, writ denied, 99-2853 (La.1/5/01), 778 So.2d 587 this Court, citing State v. Shelton, 621 So.2d 769 (La. 1993), summarized the burden of proof in habitual offender proceedings as follows:
To prove that a defendant is an habitual offender, the State must establish by competent evidence the prior felony convictions and that defendant is the same person who was convicted of the prior felonies. The State may establish this by various means, such as the testimony of witnesses to prior crimes, expert testimony matching fingerprints of the accused with those in the record of prior proceedings or photographs contained in a duly authenticated record. The State must further show that the prior convictions fall within the ten year cleansing period prescribed by La. R.S. 15:529.1(C).

Where a prior conviction resulted from a guilty plea, the State must show that the defendant was advised of his constitutional rights and that he knowingly waived those rights prior to the guilty plea, as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. If defendant denies the allegations of the bill of information, the State has the burden of proving the existence of the prior guilty pleas and *53 that defendant was represented by counsel. Once the State meets this burden, defendant must produce some affirmative evidence of an infringement of his rights or of a procedural irregularity. Thereafter, the State must prove the constitutionality of the plea.
In proving the constitutionality of the plea, the State must produce either a `perfect' transcript of the Boykin colloquy between the defendant and the trial judge or any combination of (1) a guilty plea form, (2) a minute entry, or (3) an `imperfect' transcript. If anything less than a `perfect' transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State met its burden of proof that defendant's prior guilty plea was informed and voluntary.
State v. Hollins, 742 So.2d at 684-685; State v. Morris, 01-179 (La.App. 5th Cir.8/28/01), 798 So.2d 1004, 1008.
In the present case, the State filed a habitual offender bill of information alleging that the Defendant was a fourth felony offender, listing the following three prior convictions: Case number 91-5928 of the 24th Judicial District Court, tendered on September 30, 1992, the Defendant pled guilty to simple burglary of an inhabited dwelling; case number 289-725 of the Orleans Parish Criminal District Court, tendered on May 18, 1983, the Defendant pled guilty to possession of pentazocine; and case number 81-220 of the 29th Judicial District Court, tendered on December 9, 1981, defendant pled guilty to simple burglary. Pursuant to La. R.S. 15:529.1, the Defendant filed written objections to the multiple offender bill of information and a motion to quash it, stating various objections to the previous convictions.
The 1992 guilty plea in case number 91-5928
As proof of the Defendant's 1992 guilty plea, the State introduced a certified copy of the bill of information charging the Defendant with one count of simple burglary of an inhabited dwelling, as well as, "WAIVER OF RIGHTS ON ENTRY OF A PLEA OF GUILTY" form signed by the Defendant, his attorney, and the trial judge. The form evidenced that the Defendant was advised of his right to trial by jury, the right to a judge trial, the privilege against self-incrimination, and the right to confront his accusers. Additionally, the State introduced a certified copy of an arrest register from the JPSO (State's Exhibit Number 4), related to case number 91-5928, pertaining to the November 21, 1991 arrest of the Defendant for simple burglary of an inhabited dwelling.
Sergeant McKenzie, a latent fingerprint examiner with the JPSO, testified that the fingerprints he took from the Defendant prior to the hearing matched the fingerprints on the arrest register in State's Exhibit Number 4. The arrest register was linked to the bill of information containing the same type of offense, name of victim, date of offense, and complaint number. See, State v. Duplessis, 00-971 (La.App. 5th Cir.12/14/00), 777 So.2d 529 (testimony comparing a defendant's current fingerprints with fingerprints found on prior arrest records is sufficient to prove that the defendant was the person convicted of a prior felony). Thus, the State proved that the Defendant was the same person convicted of this offense.
Pursuant to Hollins, the burden then shifted to the Defendant to produce some affirmative evidence of an infringement of his rights or of a procedural irregularity. At the hearing and now on appeal, the Defendant alleges that there was no evidence presented that a factual basis for *54 the Alford plea was presented. Further, he alleges that there was no "perfect transcript" of his "Boykinization." The Defendant, however, did not present any affirmative evidence of a procedural irregularity or an infringement of his rights. Therefore, the Defendant has not met his burden to exclude consideration of this conviction.
The 1983 guilty plea in case number 289-725[6]
The State introduced a certified copy of the bill of information charging the Defendant with one count of possession of pentazocine, as well as a minute entry that he appeared in court, represented by counsel, and entered a plea of guilty. Additionally, the State introduced a "WAIVER OF CONSTITUTIONAL RIGHTS PLEA OF GUILTY" form signed by the Defendant, his attorney, and the trial judge evidencing that the Defendant was advised and waived his rights to trial by jury, his right to confront his accusers, and his right against self-incrimination.
The State also introduced a certified copy of an arrest register from case number 289-725 pertaining to the May 22, 1982 arrest of the Defendant for possession of pentazocine. The State then introduced the testimony of Sergeant McKenzie, who testified that the fingerprints he took from the Defendant prior to the multiple offender hearing matched the fingerprints on the arrest register in State's Exhibit Number 3. Further, the arrest register and the bill of information contained the same name, date of offense, and type of offense. Therefore, we find that the State linked the arrest register to the bill of information and adequately proved the conviction and the Defendant's identity.
As stated above, the burden then shifted to the Defendant. The Defendant correctly alleged at the hearing that the waiver form contained no indication that he was advised of his right to appointed counsel through the appellate process or that he was advised of the potential for enhanced penalties for conviction of subsequent felonies. However, these defects do not render the pleas defective for enhancement purposes. Such advice was not mandated by statute until the institution of La. C.Cr.P. art. 556.1, added by Acts 1997, No. 1061 § 1, effective date, August 15, 1998. Because the trial courts were not required by statute to advise the Defendant of these rights at the time of his prior guilty pleas, he has failed to present affirmative evidence of any procedural irregularity which would have warranted the shift of the burden of proof back to the State. See, State v. Perkins, 99-1109 (La.App. 5th Cir.4/25/00), 762 So.2d 67, 73, modified by, 99-1109 (La.App. 5th Cir.6/25/00), 762 So.2d at 75. This conviction was properly considered by the trial court in the multiple offender proceeding.
The 1981 guilty plea in case number 81-220
The State introduced a certified copy of the bill of information charging the Defendant with simple burglary, a transcript of "Boykin Warning and Sentencing" of December 9, 1981, a Conditions of Probation form, a fingerprint card of October *55 21, 1981,[7] and the court minutes from November 2, 1981 through August 4, 1982. Sergeant McKenzie testified that the fingerprints on the fingerprint card matched the fingerprints of the Defendant which he took prior to the multiple offender hearing. Here, the date of the offense on the fingerprint card reflects a different date than on the bill of information, the transcript, and the Conditions of Probation form. However, the fingerprint card reflects the same name as that of the Defendant and the same offense that was included in the bill of information. Additionally, the fingerprint card reflects the same date of birth of the Defendant as is contained in the transcript and the Conditions of Probation form. Therefore, we find that the State linked the fingerprint card to the bill of information and Conditions of Probation form, establishing the Defendant's identity for this offense.
Furthermore, the minute entry and transcript reveal that the Defendant was advised of his constitutional rights. Specifically, the transcript shows that the Defendant was advised of his right to a jury trial, his right to confront his accusers, and his right against self-incrimination. Also, the transcript and minute entry indicate that the Defendant was represented by counsel at the time of his guilty plea.
The burden then shifted to the Defendant. The Defendant alleges that he was not advised of his right to counsel at the appellate level. However, as explained above, the trial courts were not required to advise a defendant of that right at the time of the 1981 guilty plea. See, State v. Perkins, supra.
The Defendant also alleges that at the time of his 1991 conviction, the applicable "cleansing period" contained in La. 15:529.1 was five years and that five years had elapsed between that conviction and his release from custody for the 1981 and 1983 convictions. The Defendant contends that because the five year period had elapsed, the State is prevented from using the 1981 and 1983 convictions for purposes of enhancement in the present case.
This issue was recently addressed by our Supreme Court in State v. Everett, 00-2998 (La.5/14/02), 816 So.2d 1272. In Everett, the defendant argued, as does the Defendant herein, that where his earlier conviction could not have been used to make him a third offender, it cannot now be use, under a change in the law that extends the period from five years to ten years, to make him a fourth felony offender. The Supreme Court held, contrary to the defendant's position, that a prior conviction that could not have been used to enhance his sentence under the law at that time, could be used under the amended version of the law that extended the period where the new law was in effect at the time the defendant committed the latest offense. Thus, the Supreme Court held that where less than ten years had passed between the Defendant's discharge from being subject to penitentiary confinement for the previous conviction and the commission of the underlying felony, all prior felonies could be considered in the multiple offender proceeding.
Based on the reasoning in Everett, the fact that five years may have elapsed between the Defendant's discharge from being subject to penitentiary confinement for his 1981 conviction for simple burglary and his 1983 conviction for possession of pentazocine *56 and the commission of the 1991 offense is not relevant. Rather, the relevant time period in the instant case is between the instant offense (December 1998) and the one immediately preceding it (the 1991 conviction of simple burglary of an inhabited dwelling). Also, the applicable time period to be considered is ten years under La. R.S. 15:529.1(C), in effect at the time the Defendant committed the latest offense.
The Defendant correctly notes that the State did not provide documentation concerning the Defendant's discharge from being subject to penitentiary confinement for his 1991 conviction. However, it is clear on the face of the record that less than ten years have elapsed between the 1991 conviction and the commission of the underlying offenses. Since we find that the Defendant is qualified to be sentenced a multiple felony offender under the statute, all of his previous convictions may be counted for enhancement purposes. See, State v. Abram, 01-1513 (La.App. 4th Cir.11/13/02), 832 So.2d 1050.
In a supplemental brief, the defense argues that the recent United States Supreme Court decision in Stogner v. California, No. 01-1757 (U.S.S.Ct., 06/26/03), ___ U.S. ___, 123 S.Ct. 2446, 156 L.Ed.2d 544, supports his argument that his 1991 conviction for simple burglary of an inhabited dwelling should not have been used to support the finding that he was a multiple offender because the statute of limitations was extended by the Legislature after it had run as to this Defendant. We find no merit in this argument because the Stogner case is distinguishable.
In Stogner, the defendant committed the offense or criminal act at a time when the statute of limitations was three years. After the three years had run, the Legislature passed a law increasing the statute of limitations for that offense and the state thereafter attempted to prosecute the defendant for the earlier offense. In this case, we are concerned with a multiple offender statute. The Defendant committed the crime which gave rise to his prosecution after the statute of limitations had been increased by the Legislature for multiple offender prosecution. Therefore, we find that the reasoning in Stogner is not controlling in this case and there was no error in the trial court's use of the 1991 conviction to support the multiple offender conviction.
Based on the foregoing, we find no error in the trial court ruling denying the Defendant's motion to quash the habitual offender bill of information or in sentencing the Defendant as a fourth felony offender. This assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER TEN
The Defendant argues that the trial court erred in sentencing him to a term of imprisonment of 20 years. The Defendant contends that the trial court should have considered making a departure from the mandatory minimum sentence.
The State responds that the trial court did not err in imposing the mandatory minimum sentence in light of the fact that the Defendant failed to introduce any appreciable evidence which would support a downward departure from the minimum sentence.
The Defendant acknowledged that the 20 year sentence was the mandatory minimum, but asked the trial court to consider a downward departure from that sentence.
The United States and Louisiana Constitutions both prohibit the imposition of excessive or cruel punishment. U.S. Const. amend. VIII; La. Const., art. I, § 20. The Louisiana Supreme Court has recognized that a mandatory minimum *57 sentence under the Habitual Offender Law may still be reviewed for constitutional excessiveness. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Cushinello, 01-109 (La.App. 5th Cir.7/30/01), 792 So.2d 926, 929, writ denied, 01-2505 (La.9/20/02), 825 So.2d 1159. When a trial court determines that the minimum sentence mandated by La. R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment," or that the sentence amounts to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," the trial judge must reduce the sentence to one that would not be constitutionally excessive. State v. Dorthey, 623 So.2d at 1280; State v. Ventress, 01-1165 (La.App. 5th Cir.4/30/02), 817 So.2d 377, 383. However, it is presumed that the mandatory minimum sentence under the Habitual Offender Law is constitutional. State v. Johnson, 709 So.2d at 676; State v. Harbor, 01-1261 (La.App. 5th Cir.4/10/02), 817 So.2d 223, 226. In order to rebut the presumption of constitutionality, the Defendant must clearly and convincingly show that he is "exceptional, which ... means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case." Id. at 227.
There must be substantial evidence to rebut the presumption of constitutionality. The "trial court may not depart from the legislatively mandated minimum simply because of some subjective impression or feeling about the defendant." State v. Mims, 00-1507(La.App. 5th Cir.12/26/01), 806 So.2d 760, 765-766; State v. Bell, 97-1134 (La.App. 5th Cir.2/25/98), 709 So.2d 921, 927, writ denied, 98-0792 (La.9/16/98), 721 So.2d 477. Additionally, a defendant's record of non-violent offenses cannot be the sole reason, or even the major reason, for declaring a mandatory minimum sentence excessive. State v. Knight, 01-881 (La.App. 5th Cir.2/13/02), 811 So.2d 947, 950-951. The Louisiana Supreme Court has strongly emphasized that downward departures from a mandatory minimum sentence should only occur in rare situations. State v. Lindsey, 99-3256 c/w 99-3302 (La.10/17/00), 770 So.2d 339, cert. denied, 532 U.S. 1010, 121 S.Ct. 1739, 149 L.Ed.2d 663, 69 U.S.L.W. 3700 (2001); State v. Johnson, supra.
In the present case, although the Defendant did request that the trial court consider a downward departure from the mandatory minimum sentence of 20 years, he made no showing of exceptional circumstances to justify such a downward departure. Rather, the Defendant argues that the sentence is excessive because his prior convictions involved non-violent crimes. As explained by State v. Lindsey, supra, the mere fact none of a defendant's crimes were crimes of violence has already been taken into account by the habitual offender laws. Accordingly, we find no error in the imposition by the trial court upon the Defendant of the mandatory minimum sentence of 20 years. This assignment of error lacks merit.
ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990).
The Defendant was convicted of La. R.S. 14:81, a "sex offense" as defined by La. R.S. 15:541(14.1). La. R.S. 15:540 et. seq. requires registration of persons convicted of sex offenses. However, we note that the trial court failed to inform the *58 Defendant of the registration requirements of La. R.S. 15:542 as required by La. R.S. 15:543(A). Therefore, the matter must be remanded for the trial court to inform the Defendant of the registration requirements of La. R.S. 15:542 by sending appropriate written notice to the Defendant within ten days of this opinion and to file written proof in the record that the Defendant received such notice. State v. Dickerson, 822 So.2d at 859.
Accordingly, for the reasons set forth above, the Defendant's two convictions for indecent behavior with a juvenile and his hard labor sentences to six years imprisonment on count two and, as a fourth felony offender, to 20 years imprisonment without benefit of probation or suspension of sentence on count one are affirmed. The case is remanded to the district court to provide proof in the record of the Defendant's receipt of appropriate notice of the registration requirements of La. R.S. 15:542.
CONVICTIONS AND SENTENCES AFFIRMED; CASE REMANDED.
NOTES
[1] In accordance with La. R.S. 46:1844, to protect the identity of the minor victims, they will be referred to by their initials, B.H. and L.W. Additionally, the victims' mothers will be referred to by their initials, Z.H. and S.W, respectively.
[2] Defendant was represented by retained counsel, who filed a brief on the Defendant's behalf with ten assignments of error. The Defendant filed a pro se brief with one assigned error. Thereafter, the Defendant's attorney withdrew. The Defendant was notified. In response to that notification this Court was informed, by letter from counsel with the Louisiana Appellate Project who visited the Defendant and by the Defendant himself, that the Defendant did not want new counsel, and wanted the matter submitted on the previously filed briefs.
[3] Although not effective at the time of trial, La. C.E. art. 412.2 allows for the introduction of evidence of similar crimes in cases involving sex offenses involving a victim who was under the age of seventeen at the time of the offense. See also, La. C.E. art. 404(B).
[4] When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, such as the erroneous admission of evidence, the reviewing court should first determine the sufficiency of the evidence by considering all of the evidence, including evidence that the trial court may have erroneously admitted. State v. Hearold, 603 So.2d 731, 734 (La.1992); State v. Mayeux, 94-105 (La.App. 5th Cir.6/28/94), 639 So.2d 828, 834. However, because this assignment of error alleges that the trial court erred in denying the motion for new trial based on insufficient evidence grounds, the issue is addressed at this point in the opinion.
[5] In the Defendant's pro se assignment of error, he addresses the same issue. The Defendant contends that the applicable "cleansing period" at the time of his 1991 conviction was five years. The Defendant argues that five years elapsed between the commission of the offense set forth in count one and his release from confinement for the 1991 conviction.
[6] In connection with State's Exhibit Number 3, in addition to the conviction in case number 289-725, the State introduced a multiple offender bill of information filed in the same case. The Defendant contends on appeal that no proper and legal evidence of prior convictions was offered to support the multiple offender bill of information and that there was no evidence of a "Boykinization" proceeding in connection with it. While we agree that no such evidence was introduced in connection with the multiple offender bill of information, it is irrelevant because the State was using the 1983 conviction in case number 289-725 as the prior conviction and not the conviction on the multiple offender bill of information.
[7] The Defendant alleges that there were no fingerprints included in State's Exhibit Number 2 which would establish that the defendant in case number 81-220 was the same individual in the instant case. To the contrary, however, an examination of State's exhibit number 2 reveals that in fact a fingerprint card was included.