COX, J.
h Following a bench trial, the defendant, Rogelio Campos (“Campos”), was convicted of DWI first offense in violation of Ruston City Ordinance (RCO) 11:98(B)(1) and failure to signal in violation of La. R.S. 32:104(B). On the DWI first offense conviction, Campos was sentenced to 180 days, suspended, three months of supervised probation, and “the standard fine for DWI first in this court.” On the failure to signal conviction, he was sentenced to 10 days, concurrent with the DWI sentence, and “the standard fine and cost for failure to signal.”
The charges were billed in separate bills of information, but were consolidated for trial, and Campos was sentenced in accordance with La. C. Cr. P. art. 493.1. Campos, now appearing pro se, appeals his convictions. On review, we find that this matter is not properly before the court as an appeal. Accordingly, we consider this matter under our supervisory jurisdiction. For the reasons stated herein, we affirm Campos’ convictions, but respectfully vacate the fine portions of his sentences and remand for resentencing.
FACTS
Around midnight on November 17, 2015, Officer Dylan Castaneda of the Ruston Police Department observed Campos make a left turn without using his turn signal. Officer Castaneda initiated a traffic stop for .failure to signal, and the two pulled over into a gas station parking lot. Campos was the only occupant in his vehicle. As Officer Castaneda approached the driver’s side of the vehicle, Campos opened his door, but remained seated in the driver’s seat. Officer Castaneda asked Campos for his driver’s license, but Campos attempted to hand the officer his social security card. Officer | ^Castaneda noticed the odor of alcohol emanating from Campos’ person and observed that he had watery and bloodshot eyes. Officer Castaneda explained to Campos that he was not under arrest at that point, but that he needed to advise Campos of his Miranda rights. Campos indicated that he understood his rights.
Officer Castaneda informed Campos that he had been stopped because he failed to use his turn signal. Campos asked why the officer would stop him for that because “people don’t use their blinker.” Campos then told the officer that he had been at a local bar and had consumed a couple of beers. At that point, Officer Castaneda advised Campos that he was going to conduct a field sobriety test, and Campos agreed to comply.
*485 First, Officer Castaneda performed the Horizontal Gaze Nystagmus test. During this test, the officer repeatedly had to advise Campos not to turn his head, but only to follow the pen with his eyes. Officer Castaneda observed all six signs indicating impairment during this test.
Next, Officer Castaneda instructed Campos to perform the walk and turn test. During this test, he observed five out of the eight signs indicating impairment.
Finally, Officer Castaneda requested that Campos perform the one-legged stand test. Campos was unable to balance, and the officer stopped the test out of concern for Campos’ safety. Campos was arrested for driving under the influence.
At trial, Officer Castaneda testified to the above events. In addition, the audio and video recording from Officer Castaneda’s dash cam in his patrol car was admitted into evidence without objection. The recording corroborated Officer Castaneda’s testimony.
Is At one point during the recording, Campos can be heard asking the officer if they are being recorded. Campos then turns toward the patrol car and engages in a monologue accusing Officer Castaneda of misconduct and coercion and “reserves his right” to file a challenge to the stop. While en route to the Lincoln Parish Detention Center, Campos stated, “I see why people are shooting cops like dogs because of people like you.”
At the detention center, Officer Castaneda advised Campos of his rights pertaining to chemical testing and the Intoxilyzer 5000. Campos refused to sign the paperwork, but submitted to the Breathalyzer test, which revealed a blood alcohol concentration of .117. After the test, Campos again related that he had consumed two beers at a local bar and then told Officer Castaneda he could shove the rights questionnaire up his armpit. The results of the test were admitted at trial with no objection. Additional evidence was introduced that showed Campos was uncooperative at the detention center. Officer Castaneda testified that, as he was leaving the building, he observed Campos karate chopping the wall.
At the conclusion of the evidence, the trial judge found Campos guilty of the traffic violation and DWI first offense. Campos was sentenced to 180 days, suspended, and the “standard fine” for DWI first offense, three months of supervised probation, and 10 days, concurrent with the DWI sentence, and the “standard fine” for failure to signal. The “Conditions of Probation” document signed by Campos and the trial judge sets out the dollar amounts of the' “fine and/or court costs” in the amount of $940.00 for the DWI conviction and $178.00 for the failure to signal conviction.
This appeal followed.
JaPISCUSSION

Sufficiency of the Evidence

In his first assignment of error, Campos focuses on the alleged discrepancies in timing of .the Intoxilyzer 5000 results and the dash cam recording to argue that the credibility of the evidence was so affected that it cannot support the verdicts of guilty.
When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Lewis, 48,373 (La. App. 2 Cir. 9/25/13), 125 So.3d 482.
Under Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), appellate courts review the record in the *486 light most favorable to the prosecution to determine whether the evidence was sufficient to convince any rational trier of fact that all the essential elements of the crime had been proven beyond a reasonable doubt. State v. Tate, 01-1658 (La. 5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Or, P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder. State v. Pigford, 05-0477 (La. 2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La. App. 2 Cir. 1/14/09), 1 So.3d 833, writ denied, 09-0310 (La. 11/6/09), 21 So.3d 297.
It is the function of the trier of fact to assess credibility and resolve conflicting testimony. State v. Thomas, 609 So.2d 1078 (La. App. 2 Cir. 1992), writ denied, 617 So.2d 905 (La. 1993); State v. Bonnett, 524 So.2d 932 (La. App. 2 Cir. 1988), writ denied, 532 So.2d 148 (La. 1988). Thehtrier of fact hears the testimony first hand and, unless the factfinder’s assessment of believability is without any rational basis, it should not be disturbed by a reviewing court. State v. Mussall, 523 So.2d 1305 (La. 1988); State v. Combs, 600 So.2d 751 (La. App. 2 Cir. 1992), writ denied, 604 So.2d 973 (La. 1992).
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a factfinder’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La. App. 2 Cir. 2/25/09), 3 So.3d 685, writ denied, 09-0725 (La. 12/11/09), 23 So.3d 913; State v. Price, 48,986 (La. App. 2 Cir. 5/15/14), 140 So.3d 1212, writ denied, 14-1274 (La. 2/6/15), 158 So.3d 814.
RCO 11-98 mirrors La. R.S. 14:98 and provides, in pertinent part:
(a)(1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
a. The operator is' under the influence of alcoholic beverages; or
b. The operator’s blood alcohol concentration is 0.08 percent or more by weight based on grams of alcohol per 100 cubic centimeters of blood.
Campos’ argument is an attack on the admissibility of evidence due to its alleged unreliability—a challenge he failed to make during trial. There is nothing in the record that indicates that the Intoxi-lyzer 5000 machine was operating abnormally. To the contrary, Officer Castaneda testified that the proper procedures were followed and that the machine was functioning properly. Further, .the CD was an accurate recording of the events of the ^evening of Campos’ stop and arrest, and any imperfections in the recording were due to voltage dips in the patrol car while the recording was taking place.
Campos was stopped based on Officer Castaneda’s personal observation of his failure to signal. Campos was read his Miranda rights and asked to perform field sobriety tests, which resulted in the officer’s reasonable conclusion that Campos was significantly impaired. Campos voluntarily submitted to the breathalyzer test, which revealed his blood alcohol level to be .117, well above the legal limit of .08. The evidence supports the convictions, and this assignment of error is without merit.

Right to a Jury Trial

Campos’ second assignment of error states that he was denied his right to a jury trial because each of the misdemeanors with which he was charged in separate bills of information is punishable by up to *487 six months and fines of $1,000.000, thereby exposing him to more than one term of six months and more than one fine of $1,000.00. He further asserts that there is no evidence that he waived -his right to trial by jury.
An accused is entitled to a trial by jury where the possible confinement exceeds six months with or without hard labor. La. Const, art. 1, § 17.
A defendant charged with a misdemean- or in which the punishment as set forth in the statute defining the offense may be a fine in excess of $1,000.00 or imprisonment for more than six months shall be tried by a jury of six, all of whom must concur to render a verdict. La, C, Cr. P. art. 779. A defendant charged with any other misdemeanor shall be tried by a judge without a jury. Id.
l7La. C. Cr. P. art. 493 provides:
Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felqnies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a .common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
La. C. Cr. P. art. 493.1 provides:
Whenever two or more misdemeanors are joined in accordance with Article 493 in the same indictment or information, the maximum aggregate penalty that may be imposed for the misdemeanors shall not exceed imprisonment for more than six months or a fine of more than one thousand dollars, or both.
While a literal reading of Article 493.1 would require that two misdemeanors be joined in the same bill or indictment for the penalty provision to operate, the Louisiana Supreme Court has expanded' this article to encompass cases in which the defendant and counsel were aware that the sentencing exposure for two misdemeanors joined for trial purposes, but not billed together, would be limited to six months and a fine of $1,000.00, thereby obviating the right to a jury trial. State v. Reynolds, 07-0641 (La. 11/21/07), 968 So.2d 722.
In Reynolds, supra, the defendant was charged with two misdemeanors that were consolidated for trial, but not in the same bill of information. Reynolds was not afforded a jury trial, nor did he waive his right to jury trial. This Court vacated the convictions and held that Reynolds was entitled to a jury trial. State v. Reynolds, 41,954 (La. App. 2 Cir. 3/8/07), 951 So.2d 518. The Louisiana Supreme Court reversed, however, holding that because it was clear on the record that the parties understood and agreed that the sentencing exposure was limited under Article 493.1, | ¡¿Reynolds’ right to jury trial had not attached. In a per curiam opinion, the Louisiana Supreme Court explained:
The majority on the court of appeal panel... sought to effectuate the rule that consolidation of separately charged misdemeanor offenses for trial, as opposed to joinder of the offenses in a single bill of information, may provide a defendant with the right to a jury trial in cases in which the aggregate punishment that could be imposed exceeds six months imprisonment and fines over the amount of $1,000... However, in the present case, the state and defense agreed to try the misdemeanor offenses together in a single proceeding with punishment capped at six months imprisonment and $1,000 in fines, i.e., as if the state had, with the concurrence of defendant, filed a superceding bill of information joining all of the offenses *488 together under La. C. Cr. P. art. 493, thereby capping the aggregate punishment that could be imposed at six months imprisonment and a fine of $1,000 as a matter of La. C. Cr. P. art. 493.1... It does not appear from the agreement that consolidation of the offenses for trial took place, or would have taken place, independently of the stipulation with regard to the sentencing cap. The defendant had no right to a jury trial on the misdemeanor offenses separately charged... and joinder of the offenses in a single superceding bill of information (or its functional equivalent) under the sentencing cap imposed by La. C. Cr. P. art. 493.1 also would not deprive defendant of his right to a jury. Id.
Campos was not entitled to a jury trial, and no waiver of said right was required. The two misdemeanors were consolidated for trial purposes, and sentencing exposure was limited by agreement of all parties under Article 493.1. The trial judge expressly stated that he was sentencing Campos under Article 493.1, and the city prosecutor noted that he was prepared to proceed with separate trials for each bill if necessary.
Additionally, Campos benefited from having the matters tried together, as it reduced his sentencing exposure. As the Louisiana Supreme Court noted in Reynolds, swpra, the reduced sentencing exposure is the functional equivalent of being charged in one bill, thus the right to a jury | atrial did not attach, and no express waiver of the right was required. This assignment of error is without merit.

Challenge to the Initial Stop, Arrest, and Illegal Search and Seizure

In his third assignment of error, Campos argues that there was no probable cause to support the initial traffic stop and that he was illegally arrested without probable cause or a warrant. For these reasons, Campos contends that all evidence seized in this manner, namely the audio and video recording and presumably the result of the Intoxilyzer 5000 test, was obtained in violation of his protection against unreasonable search and seizure and thus should have been excluded under the exclusionary rule. Campos further argues that the recording was tampered with, resulting in the deletion of an 11-second segment that would have shown the alleged failure to use his turn signal. Finally, Campos challenges the chain of custody of the CD containing the recording.
On March 23, 2016, Campos, through previous counsel, filed a motion to suppress the subject evidence. The motion to suppress was set for hearing on April 21, 2016. Campos’ counsel filed a motion to withdraw on April 5, 2016, and new counsel, Charles Buckley, was assigned to represent Campos on April 6, 2016. On the morning of trial, the city prosecutor informed the court that the pretrial motion to suppress had not been taken up. On agreement of all parties, the matter was referred to the merits of the trial. The trial judge advised Mr. Buckley that the matter could be argued during the presentation of evidence. During trial, however, there was no objection made by the defense to the introduction of any of the evidence that was previously sought to be suppressed in the pretrial motion. It appears 110that Mr. Buckley made the well-reasoned decision to abandon the motion to suppress that had been filed by previous counsel as it was clearly meritless.
Failure to raise a ground for suppressing an item of evidence in a properly filed motion to suppress waives such a basis for exclusion on appeal. La. C. Cr. P. art. 841(A). A defendant’s timely objection to the failure to rule on a pending motion to suppress evidence, before proceeding to *489 trial, preserves the defendant’s further objection to the trial court’s failure to dispose of the motion. La. C. Cr. P. art. 703; State v. Thibodeaux, 14-1002 (La. App. 3 Cir. 3/11/15), 162 So.3d 665. Here, all parties agreed that the pending motion could be argued during trial, and defense counsel elected not to re-urge the motion or object in any way to the introduction of the subject evidence.
Louisiana courts have held that when a defendant proceeds to trial without raising an issue which was the subject of a pending pretrial motion, he waives his right to have the motion heard or ruled upon. State v. Cooper, 45,568 (La. App. 2 Cir. 12/8/10), 55 So.3d 873; State v. Fletcher, 02-707 (La. App. 5 Cir. 12/30/02), 836 So.2d 557, writ denied, 03-0409 (La. 10/10/03), 855 So.2d 334; State v. Washington, 98-69 (La. App. 5 Cir. 1/26/99), 727 So.2d 673. Accordingly, failure to timely object and re-urge the motion constitutes a waiver of the motion. Id. In addition, notwithstanding the pending motion to suppress, the alleged erroneous admission of evidence during trial may not be raised on appeal in the absence of a contemporaneous objection to allow the judge to correct the error. La. C. Cr. P. art. 801; see also La. C. Cr. P. art. 841.
Campos’ arguments relating to the alleged tampering of evidence and faulty chain of custody are unsupported by the record. Deputy Chief | ^Williams testified that the recordings on the dash cam recording system are backed up onto a server when a patrol car enters the detention center parking lot. Regarding the 11-sec-ond lapse, Deputy Chief Williams testified that the company that provides the recording system advised that the problem was caused by a low-voltage occurrence in the patrol car during recording. There was no evidence presented that any officer or other individual was able to, or did, tamper with the recording. To the contrary, Deputy Chief Williams testified that it is impossible for anyone to alter the recordings backed up onto the server. He confirmed that the CD was a true and accurate recording of what was captured that evening on Officer Castaneda’s dash cam and that he hand delivered the CD to the city court.
This assignment of error is without merit.

Prosecutor Misconduct

Campos’ fourth assignment of error asserts that the city prosecutor was aware of the “egregiously tainted” recording on the CD and knew that the Ruston police officers were going to present perjured testimony to “cover up their misconduct.” Campos argues that because of this knowledge, the city prosecutor should have dropped the charges and not proceeded to trial.
Never favored in our law, a malicious prosecution action must clearly establish that the forms of justice have been perverted to the gratification of private malice and the willful oppression of the innocent. LeBlanc v. Pynes, 46,393 (La. App. 2 Cir. 7/13/11), 69 So.3d 1273, citing Johnson v. Pearce, 313 So.2d 812 (La 1975).
A successful claim for malicious prosecution requires proof of six elements: (1) the commencement or continuance of an original criminal or | iacivil judicial proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damages conforming to legal standards resulting to plaintiff. Hibernia Nat’l Bank of New Orleans v. Bolleter, 390 So.2d 842 (La. 1980); Robinson v. Goudchaux’s, 307 So.2d 287 (La. 1975); Arledge v. Sherrill, 32,189 (La. App. 2 Cir. 8/18/99), 738 So.2d *490 1215, 1222, writ denied, 99-2713 (La. 12/10/99), 751 So.2d 255.
Campos provides no factual support for this argument. The records support the city prosecutor’s decision to charge and prosecute Campos. This assignment' is without merit.

Ineffective Ctiunsel

In his final assignment of error, Campos argues that Mr. Buckley was deficient in the following respects: (1) he failed to “petition for jury trial”; (2) he failed to" argue the motion to suppress and preserve the issue for appeal; (3) he failed to discredit Officer Castaneda during his testimony; (4) he failed to effectively impeach witnesses who offered perjured testimony; (5) he failed to preserve arguments for appeal, move for appeal, or make -post-verdict motions; (6) he failed to subpoena other police witnesses; and (7) he failed to make closing remarks.
Generally, a claim of ineffective assistance of counsel is properly raised' in an application'for post-conviction relief in the trial court because it creates the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. State v. Reese, 49,849 (La. App. 2 Cir. 5/20/15), 166 So.3d 1175. When the record is sufficient, the claim may be resolved , on direct appeal in hathe interest of, judicial economy. State v. Ratcliff, 416 So.2d 528 (La. 1982); State v. Willars, 27,394 (La. App. 2 Cir. 9/27/95), 661 So.2d 673.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment of the United States Constitution. See State v. Wry, 591 So.2d 774 (La. App. 2 Cir. 1991). Under the standard set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Louisiana Supreme Court in State v. Washington, 491 So.2d 1337 (La. 1986), a conviction must be reversed-if the petitioner proves (1) that counsel’s performance fell below an objective standard of reasonableness under prevailing professional noma, and (2) counsel’s inadequate performance prejudiced the defendant to the extent that the trial was rendered unfair and the verdict suspect. State v. Legrand, 02-1462 (La. 12/3/03), 864 So.2d 89, cert. denied, 544 U.S. 947, 125 S.Ct. 1692, 161 L.Ed.2d 523 (2005).
A deficient performance is established by showing that the attorney’s actions' fell below the standard of reasonableness and competency required for attorneys in criminal cases and is evaluated from the attorney’s perspective at the time of the occurrence, Strickland,' supra. A reviewing court must give great deference to trial counsel’s judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Grant, 41,745 (La. App. 2 Cir. 4/4/07), 954 So.2d 823, writ denied, 07-1193 (La. 12/7/07), 969 So.2d 629.
Counsel has a duty to make reasonable investigations, and a decision not to investigate must be . assessed for reasonableness under the circumstances. Strickland, supra. Counsel’s investigative actions and choices may be influenced by information and decisions from the defendant 114and, under the circumstances of the case, might diminish or eliminate the need for further investigation. Id. “Counsel is ineffective when he fails to interview known witnesses.” State v. Butler, 41,985 (La. App. 2 Cir. 6/20/07), 960 So.2d 1208, 1213, writ denied, 07-1678 (La. 5/9/08), 980 So.2d 685; State v. Moore, 48,769 (La. App. 2 Cir. 2/26/14), 134 So.3d 1265, writ denied, 14-0559 (La. 10/24/14), 151 So.3d 598; State v. Potter, 612 So.2d 953 (La. App. 4 Cir. 1993), writ denied, 619 So.2d 574 (La. 1993).
*491 Once the attorney’s performance is found to have been deficient, the court next considers whether that performance resulted in errors so serious that the defendant was deprived of a fair trial with a reliable result. Strickland, supra. The defendant must prove the deficient performance caused him an actual prejudice so severe that, but for his counsel’s deficient performance, there is a reasonable probability that the outcome of the proceedings would have been different. Strickland, supra; State v. Pratt, 26,862 (La. App. 2 Cir. 4/5/95), 653 So.2d 174, writ denied, 95-1398 (La. 11/3/95), 662 So.2d 9. A reasonable probability is one sufficient to undermine confidence in the outcome of the trial. State v. Ball, 554 So.2d 114, 116 (La. App. 2 Cir. 1989).
Campos fails to meet the Strickland standard of showing a defect in trial counsel’s performance or that he was prejudiced by any such alleged defective performance.
The failure to “petition for jury trial” was a strategic decision that reduced Campos’ sentencing exposure to six months and a fine of $1,000.00. Campos was not prejudiced by this decision because, according to the statement by the city prosecutor, he was prepared to proceed under separate 11Bbills of information, which would have doubled Campos’ sentencing exposure.
The failure to re-urge the motion to suppress is a little more difficult; however, the testimony of Officer Castaneda makes clear that the traffic stop was valid, and the subsequent arrest for DWI, the recording of the stop, and the field sobriety tests were also valid. Additionally, as stated earlier, Campos was advised of his rights early on and voluntarily submitted to the Breathalyzer test. There was no basis for the motion to suppress and no likelihood that it would have resulted in the exclusion of evidence. Even if there were any deficiency in failing to argue the motion during trial, it was harmless and did not prejudice Campos in any way.
The remaining claims are also without merit. Mr. Buckley effectively cross-examined Officer Castaneda. Campos does not provide any specific impeachment evidence that would have been effective in attacking the officer’s credibility. Further, Campos provides only conclusory statements that there were other officers or law enforcement personnel who should have been called as witnesses. These conclusory statements are insufficient to support a claim under Strickland.
This assignment of error is without merit.

Indeterminate Sentence

If a defendant who has been convicted of an offense is sentenced to imprisonment, the court shall impose a determinate sentence. La. C. Cr. P, art. 879. The fine portions of Campos’ sentences are unclear in a few respects. First, the transcript reflects that the trial judge sentenced Campos to “the standard fine” for both DWI first offense and failure to signal. No dollar amount was stated in the transcript. Second, there is a discrepancy |! (¡between the minutes and the judgment of conviction form. The minutes indicate that Campos was to pay fines and costs in the amount of $939.50 for the DWI conviction and $178.00 for the failure to signal conviction. However, the “Judgment on Conviction and Misdemeanor Probation Order” sets the fines and costs at $940.00 for the DWI conviction and $178.00 for the failure to signal conviction. Third, the sum of the two amounts exceeds the maximum fine allowed under La. C. Cr. P. 493.1. Article 493.1 provides a maximum aggregate fine of $1,000.00, and the amounts set forth in the minutes are for fines and *492 costs. Additionally, the amounts set forth in the judgment of conviction represent fines and/or court costs. Thus, the sentence is unclear as to what portion of the respective amounts assessed are a fine, as per Article 493.1, and what portion represents court costs, which would not be included in the Article 493.1 fine.
Due to the above stated reasons, the fine portion of the sentences are vacated and the matter is remanded for clarification during resentencing.
CONCLUSION
Considering this matter under our supervisory jurisdiction, we affirm Campos’ convictions for DWI first offense and failure to signal. However, we respectfully vacate the fine portions of Campos’ sentences and remand this matter back to the trial court for clarification of the fines and court costs during resentencing in order to comply with La. C. Cr. P. Article 493.1.
AFFIRMED IN PART AND REMANDED IN PART.