# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 23-687

STATE OF LOUISIANA

VERSUS

DELON QUINELL SWAFFORD

**********

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 97316
HONORABLE SCOTT WESTERCHIL, DISTRICT JUDGE

**********

## GARY J. ORTEGO
### JUDGE

**********

Court composed of Candyce G. Perret, Gary J. Ortego, and Guy E. Bradberry, Judges.

**CONVICTIONS AFFIRMED; HABITUAL OFFENDER SENTENCES VACATED; CASE REMANDED FOR RESENTENCING, WITH INSTRUCTIONS.**

**Terry Wayne Lambright**
**District Attorney**
**William R. Thornton**
**Assistant District Attorney**
**P. O. Box 1188**
**Leesville, LA 71496**
**(337) 239-2008**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P. O. Box 6547**
**Lake Charles, LA 70606-6547**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Delon Quinell Swafford**

**ORTEGO, Judge.**

In this criminal appeal, Defendant, Delon Quinell Swafford, appeals his convictions and habitual offender sentences. For the reasons discussed below, we affirm Defendant's convictions and Defendant's sentence for count two, possession of marijuana weighing less than fourteen grams, is affirmed. Defendant's remaining habitual offender sentences for counts one, three, four, and five, however, are vacated and the matter remanded for a full resentencing hearing, with instructions.

## PROCEDURAL HISTORY

On March 13, 2023, Defendant, Delon Quinell Swafford, was charged by amended bill of information[1] with five different counts: Count 1—possession with the intent to distribute methamphetamine weighing twenty-eight grams or more, a violation of La.R.S. 40:967(A)(1) and (B)(1)(b); Count 2—possession with the intent to distribute marijuana weighing less than two and one-half pounds, a violation of La.R.S. 40:966(A)(1) and (B)(2)(a); Count 3—possession of fentanyl weighing two grams or more but less than twenty-eight grams, a violation of La.R.S. 40:967(C) and (C)(4)(b); Count 4—possession of cocaine weighing less than two grams, a violation of La.R.S. 40:967(C) and (C)(1); and Count 5—possession of morphine weighing less than two grams, a violation of La.R.S. 40:967(C) and (C)(1).

Following a two-day trial, a unanimous jury found Defendant guilty on March 15, 2023, of the following: Count 1—possession with the intent to

---

[1]The original bill of information was filed February 25, 2022. At trial, the State amended the bill of information to correct an error in citation for possession with the intent to distribute methamphetamine weighing more than twenty-eight grams. The State asserted that the original bill cited La.R.S. 40:967(A)(2). The amended bill, the State asserted, changed the citation to La.R.S. 40:967(A)(1).

distribute methamphetamine weighing twenty-eight grams or more; Count 2—misdemeanor possession of marijuana weighing more than fourteen grams (responsive verdict); Count 3—possession of fentanyl weighing less than two grams (responsive verdict); Count 4—possession of cocaine weighing less than two grams; and Count 5—possession of morphine weighing less than two grams.

On May 19, 2023, the State filed a habitual offender bill, charging Defendant as a sixth habitual offender. At a hearing held on July 18, 2023, the trial court adjudicated Defendant a sixth habitual offender and scheduled sentencing for August 2, 2023. On that date, the trial court sentenced Defendant as a sixth felony offender to twenty-five years at hard labor "without benefits" on counts one, three, four and five, and to six months in parish jail on count two.[2] On September 11, 2023, Defendant filed a motion to reconsider sentence that was denied without a hearing, and the trial court granted Defendant's motion for appeal.

On appeal, Defendant is alleging two assignments of error—one alleging the felony sentences are illegal, and one alleging Defendant's trial counsel was ineffective. The State, in brief and oral argument, concedes Defendant's claim of illegally excessive felony sentences. As will be discussed, those sentences are vacated, and the case remanded for resentencing as to the felony convictions. The sentence for count two, the misdemeanor conviction, is upheld. Defendant's claim of ineffective assistance of counsel is relegated to post-conviction relief.

_____

[2]Immediately after the trial court stated that it was sentencing Defendant as a sixth felony offender and then imposed the habitual offender sentences, the trial court stated: "The sentence imposed was not enhanced pursuant to Revised Statute[s] 15:529.1 [.]" The trial court's statement was clearly a misstatement.

## FACTS:

Based on suspected drug activity, a search warrant was issued for Defendant's home. A search warrant for Defendant's vehicle was also obtained. For safety reasons, agents with the Vernon Parish Sheriff's Office decided to initially approach Defendant away from his home or at his place of employment. The agents followed Defendant and upon arrival at his place of employment, the agents approached his vehicle, explained to him about the search warrant and patted him down for weapons. In addition to a bulge in Defendant's pocket, one agent noticed suspected methamphetamine in plain view on the driver's seat of Defendant's vehicle. Agents executed the search warrant, then used Defendant's key to enter his residence. As a result, narcotics were found in Defendant's residence, in his vehicle, and on his person.

## ERRORS PATENT:

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find there are several errors patent involving the sentences imposed. Additionally, the minutes of sentencing require correction.

First, the habitual offender sentences imposed for counts three, four, and five are illegally excessive and were erroneously imposed without the benefit of parole. Defendant raises these errors in Assignment of Error Number One. Thus, we will address these errors in that assignment.

Second, the minutes of the jury's verdict require correction. According to the jury's written verdict, Defendant was convicted on count two of the responsive verdict of *possession* of marijuana weighing more than fourteen grams. The minutes, however, indicate that Defendant was convicted on count two of

*possession with the intent to distribute* marijuana weighing more than fourteen grams. Thus, on remand, the trial court is instructed to amend the minutes of the jury's verdict to correctly reflect the jury's verdict on count two as *possession* of marijuana weighing more than fourteen grams.

Third, there was a misstatement by the trial court at sentencing regarding count three. As stated above, for count three, the jury found Defendant guilty of the responsive verdict of possession of fentanyl weighing less than two grams. At sentencing, however, the trial court stated Defendant was convicted of possession of fentanyl, with an aggregate weight of two grams or more but less than twenty-eight grams. This error is moot, however, by our finding in Assignment of Error Number One, discussed below, that the sentence for count three is illegally excessive, necessitating the sentence be vacated and the case remanded for resentencing.

Fourth, there is an error in the minutes of sentencing regarding count two. The error occurred because of a misstatement originally made by the trial court at sentencing regarding count two. As stated above, for count two, the jury found Defendant guilty of the responsive verdict of *possession* of marijuana weighing more than fourteen grams, a misdemeanor. At sentencing, however, the trial court stated Defendant was convicted of *possession with intent to distribute* marijuana, with an aggregate weight of two and one-half pounds. The trial court then found Defendant to be a sixth felony offender on all counts and ordered all counts to be served at hard labor for twenty-five years, without benefit of probation, parole, or suspension of sentence. After being alerted to the error, the trial court clarified the sentence as follows:

4

All right, let's clarify for the record, four of these offenses were felonies and there was one misdemeanor; count two was a misdemeanor for marijuana. The felonies are twenty-five years without benefit and count two, the misdemeanor, is six months in the parish jail. All those counts are to run concurrent [sic] with one another.

The minutes of sentencing, however, incorrectly refer to count two as possession with the intent to distribute marijuana and incorrectly state the sentence for count two was "twenty-five (25) years hard labor . . . without benefit."

"[W]hen the minutes and the transcript conflict, the transcript prevails." *State v. Wommack*, 00-137, p. 4 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, 369, *writ denied*, 00-2051 (La. 9/21/01), 797 So.2d 62. Thus, on remand, we order the trial court to amend the minutes of sentencing to correctly reflect the trial court's statement at sentencing that the sentence for count two was for a misdemeanor marijuana conviction and was for six months in the parish jail.

## ASSIGNMENT OF ERROR NUMBER ONE:

Defendant asserts the trial court's application of the wrong habitual offender sentencing range resulted in the imposition of illegally excessive sentences for counts three, four, and five. Additionally, even though the sentence imposed for count one is legal, Defendant argues the sentence should nonetheless be vacated and the case remanded for resentencing because the trial court applied the wrong sentencing range to that count as well.

The State in brief and at oral argument agreed that the trial court erred in imposing illegally excessive sentences for counts three, four and five and concedes the case should be remanded for resentencing on those counts. Thus, we vacate the sentences imposed on Defendant on those counts and remand the matter to the trial court for resentencing on counts three, four and five.

5

*Habitual Offender Sentences*

As to Defendant's habitual offender sentences, specifically for count one which was legal in its length, we note that there is authority for remanding all of the sentences for resentencing in light of the trial court's mistaken belief that the sentencing range was twenty years to life. In *State v. Green*, 21-14, 21-15 (La.App. 3 Cir. 10/27/21), 329 So.3d 917, the defendant was convicted of multiple controlled dangerous substance offenses, all violations of La.R.S. 40:967(A)(1). When imposing the sentences, the trial court in *Green* mistakenly believed the proper sentencing range for Green's violations of La.R.S. 40:967 was two to thirty-one years. *Id.* Prior to the occurrence of Green's offenses, however, the legislature had amended the applicable penalty range to one to ten years. Consequently, one of Green's sentences exceeded the maximum sentence, necessitating that it be vacated, and the case remanded for resentencing. *Id.*

Although the remaining sentences for Green's violations of La.R.S. 40:967 were within the new sentencing range, the panel in *Green* found the sentences should nonetheless be vacated and the case remanded for resentencing. *Id.* The court reasoned:

> Although the other sentences for violations of La.R.S. 40:967 are within the sentencing range, as the record reflects that the trial court made its sentencing decisions based upon an incorrect sentencing range of two to thirty-one years, we choose to vacate all the sentences under this statute and remand for resentencing. This court has stated, " '[A] sentence founded on an incorrect view of the law should usually be set aside.' *State v. Spruell*, 403 So.2d 63, 64 (La.1981)." *State in the Interest of D.B.*, 14-85 [p. 16] (La.App. 3 Cir. 5/7/14), 141 So.3d 296, 306-07. In analyzing this issue, the second circuit observed:
>
> > In *State v. Spruell*, 403 So.2d 63 (La.1981), the defendant pled guilty to possession of marijuana with intent to distribute and was sentenced to five years in prison. The defendant appealed his sentence, arguing,

inter alia, that the trial court failed to utilize the correct penalty provisions during sentencing. The record revealed that the court imposed the sentence, cited the statute pertaining to distribution of Schedule II narcotics, rather than a Schedule I narcotic, such as marijuana. The court mistakenly believed that it was imposing the minimum sentence allowable under the charged statute. However, the correct sentencing range for the charged statute was zero to 10 years. *Id*. The Louisiana Supreme Court vacated the sentence, stating:

> In reality, the cited penal provision, R.S. 40:967(B)(1), deals only with the intended distribution of Schedule II narcotics, see R.S. 40:964, a classification not including marijuana, the distribution of which carries no minimum penalty and a maximum of ten rather than thirty years' imprisonment. Though the sentence actually imposed fell within the statutorily-prescribed range, the danger that such a mistake of law might have affected the trial court's attempt at leniency appears significant. For this reason, a sentence founded on an incorrect view of the law should usually be set aside.

> The trial court's mistaken view of the statutorily authorized penalty also resulted in its unknowing imposition of a relatively stiff sentence rather than a minimal one. The imposition of such an apparently severe sentence requires record justification by the trial court, whose responsibility it is to ensure that the sentence has a sufficient informational basis to protect the accused's right of review on appeal. Such factual justification is especially crucial where, as here, the accused's guilty plea leaves no other evidence of record which clearly illumines the trial court's sentencing choice.

*Id.* at 64-65 (internal citations omitted).

*State v. Preston*, 47,273, pp. 14-15 (La.App. 2 Cir. 8/8/12), 103 So.3d 525, 533-34.

Although the second circuit distinguished *Spruell* because "nothing in this record convinces us that the trial court intended to impose a lenient sentence for this defendant[,]" it did not question

*Spruell's* reasoning. *Id*. at 535. In Mr. Green's case, the trial court incorrectly believed the sentencing range was two to thirty-one years. Thus, the trial court gave Mr. Green sentences it believed to be in the lower to middle range of possible sentences. However, under the correct sentencing scheme, the trial court imposed two higher-range sentences (seven years), a maximum sentence (ten years), and an illegally excessive sentence (fourteen years).

Prior to trial, the state expressed their desire for maximum sentences to the court. In determining the sentence, the trial court went through each of the factors provided in La. C.Cr.P. art. 894.1. Although the trial court found that there were no mitigating factors, it chose to impose sentences it believed to be on the lower end of the sentencing range. It does not appear from the record that the trial court intended to impose such severe sentences, and undoubtedly, the mistaken view of the statutorily authorized penalty directly influenced the penalty received by Mr. Green. Accordingly, the sentences in case numbers 17-4637, 17-4824, 17-4825, and 17-4826 are vacated and remanded for resentencing. This does not affect the sentence for illegal possession of weapons and controlled dangerous substances and the sentence imposed in 17-4638 is affirmed.

*Id.* at 922–23 (alterations in original).

In the present case, the trial court specifically mentioned that it could have given Defendant a life sentence but did not do so because neither the current convictions nor Defendant's previous convictions were crimes of violence. The trial court further stated that Defendant had not harmed anyone but merely used drugs and alcohol. We find that the trial court's mistaken belief that it could have imposed a life sentence could have influenced the sentences imposed by the trial court. Accordingly, all of the habitual offender sentences, counts one, three, four, and five, including the legal sentence imposed for count one, are vacated and the case remanded for resentencing. Additionally, the trial court is instructed to use the penalty provision set forth in La.R.S. 15:529.1(4)(b) for sentencing.

*Parol Eligibility:*

Defendant also argues, and the State agrees, that the trial court erroneously restricted Defendant's parole eligibility. As Defendant notes in brief, the trial

court initially ordered Defendant, as a sixth felony offender, to serve twenty-five years at hard labor, without benefit of probation, parole, or suspension of sentence. When the trial court subsequently clarified that the sentence on the misdemeanor was six months in the parish jail, the trial court stated the felonies were twenty-five years "without benefit." Both Defendant and the State interpret the trial court's "without benefit" statement to mean without benefit of parole, probation, or suspension of sentence.

Section G of La.R.S. 15:529.1 states that any habitual offender sentence must be served at "hard labor without benefit of probation or suspension[.]" The restriction of parole eligibility, however, is that which is provided for in the reference statute. None of the reference statutes for the underlying felonies at issue in the present case call for a restriction of parole benefits.

Accordingly, when the case is remanded for resentencing, the trial court is instructed that it is not authorized to deny or restrict parole eligibility for any of the habitual offender sentences.

## ASSIGNMENT OF ERROR NUMBER TWO:

Defendant asserts his counsel was ineffective for failing to seek the suppression of evidence prior to trial and failing to object to the admission of that evidence introduced at trial. Defendant claims he was prejudiced by his counsel's ineffectiveness because he would not have been convicted if the evidence had been suppressed, specifically:

> Delon Swafford asserts that trial counsel rendered ineffective assistance for the following reasons: 1) counsel failed to file a motion to suppress evidence on the basis that the affidavit in support of the search warrant was insufficient to provide the needed probable cause for the issuance of the search warrant; 2) counsel failed to contest the reasons and authority that the agents had to approach, engage with, and detain Delon Swafford; 3) counsel failed to contest

9

the "plain-sight" assertions of Agent Fulks; and 4) counsel failed to object to the admission of the seized evidence at trial.

In response, the State contends Defendant failed to prove his counsel erred. Alternatively, the State contends Defendant's ineffective assistance of counsel claims should be raised via application for post-conviction relief. Finally, the State contends defense counsel's failure to seek suppression of evidence may have been a strategic decision. The State suggests defense counsel may have agreed to waive any attack of the search warrant in exchange for the State foregoing the introduction of evidence pertaining to Defendant's other crimes.

*Evidence at Trial*

At trial, Agent Misti Martin testified that the morning of October 4, 2021, she and four other agents executed a search warrant of Defendant's residence. Before executing the warrant, Agent Martin explained, she wanted to initially make contact with Defendant outside of his residence via a traffic stop or by approaching him at work. Agent Martin explained the reason for making contact with Defendant in this manner:

> And the reason we do that is for officer safety. We're not kicking in front doors, we're not drawing guns. It's safe for us, it's safe for the -- the person that we're trying to make contact with and it's safe for everybody around. If we walk up to somebody in plain clothes, you know, but identifiable and make contact with somebody, it's usually a smoother process for everybody.

Agent Martin stationed herself near Defendant's residence and watched for Defendant to leave. When Defendant left the residence and headed toward work, Agent Martin tried not to lose sight of him but eventually lost sight of Defendant in traffic. At that point, Agent Martin positioned two other agents at the entrance of Leesville Lumber, "Defendant's place of work." Agent Martin went back to Defendant's residence to maintain security of the scene.

10

A short time later, Agent Martin received word that the two other agents made contact with Defendant at Leesville Lumber, Defendant's place of work. When the two agents returned to the residence, Agent Martin gained entry by using keys found on Defendant's person. On cross-examination, Agent Martin explained that because of his behavior, Defendant did not return to the residence but was transported to the Sheriff's Office. According to Agent Martin, no one else was found in Defendant's residence. A separate key from Defendant's key ring was used to unlock a separate door in the residence. The bulk of illegal narcotics, Agent Martin testified, was found in this room.

Because they lost sight of Defendant's vehicle once it left the residence, Agent Martin obtained an additional search warrant for Defendant's vehicle. Agent Martin agreed that narcotics were found in the vehicle. When asked if the vehicle was searched at the lumberyard, Agent Martin responded:

> It was not searched at the lumberyard; however, you will have to check with Agent Burwell or Agent Fulks on exactly what all took place there 'cause like I said, I never made it there. But the information that I was given was no, it was not searched, just him.

According to Agent Martin, Agent Fulks drove Defendant's vehicle from the lumberyard to Defendant's residence.

During Agent Martin's cross-examination, defense counsel asked her to explain what is needed to obtain a search warrant. Agent Martin responded:

> This particular case we - - we were receiving a lot of information about Mr. Stafford, high traffic, the - - which normally is illegal narcotic activity, sales. You know, somebody pulls in and stays for a couple of minutes and then leaves. On this particular one we did use - - are we good on this, Wayne?

Defendant's attorney then asked: "In order to execute a search warrant, you have to obtain a valid search warrant which is signed by a judge, correct?" Agent

Martin replied, "Yes, ma'am[,]" and then agreed such a search warrant was obtained in this instance.

On re-direct, the State asked Agent Martin if anyone challenged the trial judge's authority to issue the search warrants in this case, and Agent Martin replied, "No."

The following colloquy occurred regarding the search of Defendant's vehicle:

Q.      You didn't just willy-nilly go through that car, did you?

A.      No.

Q.      You could have, Agent Fulks could have.  Mr. Swafford was caught with dope in his pockets, right?

A.      Correct.

Q.      You can search a car at that point, can't you?

A.      Correct.

Q.      But instead, you went and got another warrant?

A.      Correct.

Agent Martin testified that she executed the warrant in the present case the same way she had executed narcotics warrants in the past.  The procedure, Agent Martin testified, was standard and had been accepted over and over again.

Finally, when Agent Martin was asked whether any civilians approached Defendant's residence during the execution of the search warrant, Agent Martin responded:

> There were two females, I believe, that tried to approach the property.  I did not make contact with them.  I don't know anything about them.  I know Agent Burwell spoke with them, so you'll have to speak with him in reference to that.

According to Agent Martin, no one is allowed on the property during the execution of a search warrant.

Agent Dustin Fulks of the Vernon Parish Sheriff's Office testified that he was an agent with the Narcotics Task Force. Agent Fulks testified that he was the officer that approached Defendant when he exited his vehicle at work. The agent was in plain clothes and approached Defendant from the driver's side. According to Agent Fulks, Defendant was leaning into the backseat of his vehicle and appeared to be putting stuff in his pockets. When Agent Fulks told Defendant that he was with the Sheriff's Office, Defendant became irate and was placed in handcuffs. Defendant was advised of his *Miranda* rights and was detained. When asked the difference between detention and arrest, Agent Fulks replied: "[A]t this time there was no probable cause for arrest. Mr. Swafford was just detained due to how he was acting."

According to Agent Fulks, he saw a clear plastic baggie containing a crystal-like substance in plain view on the front driver's seat of Defendant's vehicle. Agent Fulk's training and experience led him to believe the substance was methamphetamine. Once he saw the substance in plain view, Agent Fulks testified, he had probable cause to search Defendant's person. During the pat down of Defendant, Agent Fulks felt a bulge in one of Defendant's front pockets. Agent Fulks testified that the bulge was determined to be a clear plastic baggie of a green leafy substance and a clear plastic baggie of a crystal-like substance. Training and experience led Agent Fulks to believe the green leafy substance was marijuana, and the crystal-like substance was methamphetamine. At this point, Defendant was placed under arrest and transported to the Vernon Parish Sheriff's Office jail.

Agent Fulks drove Defendant's vehicle to Defendant's residence, where it was searched pursuant to a search warrant. According to Agent Fulks, narcotics were found in the vehicle. In the backseat of the vehicle, Agent Fulks found a book bag containing methamphetamines and an unknown powder substance. Agent Fulks further testified that the narcotics were packaged in small, individual plastic bags. Agent Fulks found more than a dozen bags, which, in his training and experience, indicated the selling of illegal narcotics.

On cross-examination, Agent Fulks explained that when he approached Defendant, Defendant was standing outside of the vehicle, the back door was open, and Defendant was leaning into the vehicle. Defendant turned around, the agents identified themselves, and Defendant was detained. When asked if he frisked Defendant, Agent Fulks replied, "He was patted down at that point to make sure he did not have any weapons, yes, ma'am." Although Agent Fulks recognized a bulge during the pat down, Agent Fulks did not pull the bulge out at that time. While explaining to Defendant that a search warrant was going to be conducted at his residence, Agent Fulks "noticed in plain view sitting in the driver's seat . . . a crystal-like substance in a small gram size bag[.]" According to Agent Fulks, the substance was in the driver's seat. At that point, Agent Fulks testified, a search of Defendant's person was conducted. Later, after the vehicle was taken back to Defendant's residence and a search warrant for the vehicle was obtained, Agent Fulks assisted in the search of the vehicle.

According to Agent Fulks, two females pulled up to Defendant's residence during the execution of the search warrant. When asked if he searched the women or the vehicle being driven by the women, Agent Fulks replied, "No, ma'am." Agent Fulks could not answer whether another officer searched the women's

14

vehicle, and Agent Fulks did not recall "a vehicle being searched other than the vehicle that was on Allison, the Buick." When asked if he recalled whether the women were searched by any of the agents, Agent Fulks answered, "No, ma'am." On re-direct, Agent Fulks testified that he turned the women away, did not allow them in the house, and did not allow them on the property.

The only witness to testify for Defendant was his cousin, Martina Davis. According to Ms. Davis, she and another woman drove to Defendant's residence "during the execution of the search warrant" they were told that their vehicle had to be searched. Ms. Davis recalled that two or three officers approached her when she arrived. Ms. Davis testified that she got out of her vehicle and then the following colloquy took place regarding what was searched in her car:

> A.    I - - they just really - - I have like a little wristlet, they looked in there. I don't carry a big purse. It was like a little small - - and they looked in there and that was it. I think her purse was in the backseat of the car, so they searched her purse, but it was in the car.
>
> Q.    Okay, and when you say "her purse," you're talking about the individual you came with, - -
>
> A.    Yes, ma'am.
>
> Q.    And did they search the vehicle?
>
> A.    Yes, they opened the trunk, opened the doors.

When asked if she went into the residence, Ms. Davis testified that she went up to the front door to ask what damage had been done to the residence.

On cross-examination, the following colloquy took place:

> Q.    You said that you were searched, right?
>
> A.    Yes, sir.
>
>        . . . .

15

Q. And if two police officers testified that they didn't search anybody, they'd be lying?

A. Yes, sir.

Q. Okay.

A. They searched the vehicle.

## Search of Residence

Defendant raises several issues regarding the affidavit in support of the search warrant of his residence. First, Defendant claims the information set forth in the search warrant affidavit was too general to be tested—the confidential informant (CI) was not identified, the person receiving the information was not identified, the time frame the information was provided was not stated, and specific information about the alleged sales (including the quantities and packaging sold) were not set forth. Additionally, Defendant asserts the affidavit lacked sufficient information to determine if the affiant had any first-hand knowledge of the controlled buys. Further, Defendant contends the affidavit does not state that any drugs were retrieved from inside the home during the controlled buys, does not indicate who owns the home, and does not indicate how the affiant determined that Defendant lived at the home.

In addition to failing to identify the CI, Defendant asserts the affidavit failed to contain any information regarding the CI's reliability. As for the controlled buys, Defendant contends the affidavit failed to give any specific information regarding the controlled buys. Defendant concludes by arguing that the magistrate and officers lacked good faith in their reliance on the affidavit and search warrant:

> The lack of sufficient information concerning the confidential informant's reliability, lack of information concerning the controlled buys, failure to confirm the proper address of the residence, and failure to confirm the owner of the residence, should have been

16

sufficient indicators that further inquiry was necessary, both for the magistrate before signing the warrant, and for defense counsel in evaluating whether to seek suppression of the evidence. As the federal court did in [*U.S. v.*] *Brown*[, 567 Fed. Appx. 272, 280-81 (5th Cir. 2014)], this court should find the Affidavit in support of a search warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" as noted in [*United States v.*] *Leon*[, 468 U.S. 897, 104 S.Ct. 3405 (1984)].

The State, citing a case from this court, contends that "virtually the same grounds and format" used by Agent Martin in the affidavit at issue was determined to provide the executing officers with reasonable grounds to believe the warrant was properly issued. Thus, the State claims, the good-faith exception to the warrant requirement should be applied. *State v. Brown*, 19-682 (La.App. 3 Cir. 6/17/20), 299 So.3d 661, *writ denied*, 20-927, 20-925 (La. 11/24/20), 305 So.3d 100, 105. As an alternative, the State argues Defendant's ineffective assistance of counsel claim should be raised via an application for post-conviction relief, particularly since trial counsel's decision to not file a motion to suppress may have been strategical.

*Jurisprudence and Analysis*

"The Sixth Amendment, applicable to the States by the terms of the Fourteenth Amendment, provides that the accused shall have the assistance of counsel in all criminal prosecutions." *Missouri v. Frye*, 566 U.S. 134, 138, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012). *See also State v. Thomas*, 12-1410, p. 5 (La. 9/4/13), 124 So.3d 1049, 1053. The United States Supreme Court has long recognized that the right to counsel is the right to the "effective assistance of counsel." *Frye*, 566 U.S. at 138, 132 S.Ct. 1399. Claims of ineffective assistance of counsel are generally governed by the standard set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), adopted by this Court in *State v. Washington*, 491 So.2d 1337 (La. 1986).

To prevail on a claim of ineffective assistance, a defendant must first show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88, 104 S.Ct. 2052. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the

error has no effect on the judgment." *Id.* at 691, 104 S.Ct. 2052. *See also Buck v. Davis*, [580] U.S. [100], 137 S.Ct. 759, 775–77, 197 L.Ed.2d 1 (2017) (explaining two prongs of *Strickland*). To satisfy the second prong of *Strickland*, a litigant must also demonstrate prejudice. "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland*, 466 U.S. at 691–92, 104 S.Ct. 2052. Thus, the "defendant must [also] show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. The *Strickland* Court further explained that in making a determination of ineffectiveness of counsel, "[i]n every case the Court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.* at 696, 104 S.Ct. 2052.

*State v. Curley*, 16-1708, pp. 7–8 (La. 6/27/18), 250 So.3d 236, 241–42 (first and second alterations added).

A claim of ineffective assistance of counsel is properly raised in an application for post-conviction relief. This allows the trial judge an opportunity to order a full evidentiary hearing on the matter. *State v. Burkhalter*, 428 So.2d 449 (La.1983). However, where the record contains evidence sufficient to decide the issue and the issue is raised by an assignment of error on appeal, it may be considered. *State v. James*, 95-962 (La.App. 3 Cir. 2/14/96), 670 So.2d 461.

*State v. Francis*, 99-208, pp. 10–11 (La.App. 3 Cir. 10/6/99), 748 So.2d 484, 491, *writ denied*, 00-544 (La. 11/13/00), 773 So.2d 156.

Recently, this court found a similar ineffective assistance of counsel claim should be relegated to post-conviction relief:

There are cases in which courts of appeal have reviewed claims of ineffective assistance of counsel for failure to file a motion to suppress. For example, in *State (City of Ruston) v. Campos*, 51,447, 51-448, p. 15 (La.App. 2 Cir. 6/21/17), 224 So.3d 480, 491, the second circuit concluded:

[T]he testimony of Officer Castaneda makes clear that the traffic stop was valid, and the subsequent arrest for

18

DWI, the recording of the stop, and the field sobriety tests were also valid. Additionally, as stated earlier, Campos was advised of his rights early on and voluntarily submitted to the Breathalyzer test. There was no basis for the motion to suppress and no likelihood that it would have resulted in the exclusion of evidence.

However, there are situations wherein consideration of the issue is not appropriate. In *State v. Montejo*, 06-1807, pp. 22-26 (La. 5/11/10), 40 So.3d 952, 968-70 (alterations in original) (footnotes omitted), *cert. denied*, 562 U.S. 1082, 131 S.Ct. 656, 178 L.Ed.2d 513 (2010), which was on remand from the Supreme Court for consideration of whether an apology letter should be suppressed pursuant to *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (under which a defendant in custody cannot be interrogated once he has asserted his right to counsel unless he initiates further communications with police), the supreme court stated the following:

> We have previously considered the problems arising when a party does not file a motion to suppress, and then later testifies at trial as to facts that suggest the evidence should have been suppressed. *State v. Lipscomb*, 00-2836 (La. 1/25/02), 807 So.2d 218 and *State v. Watson*, 00-1580 (La. 5/14/02), 817 So.2d 81. In *Lipscomb*, the defendant alleged on appeal that his attorney at trial provided ineffective assistance of counsel by failing to file a motion to suppress evidence. This Court found ineffective assistance claims are to be considered in post-conviction proceedings and not on appeal, and, in so holding, explained the reasons why motions to suppress are required pre-trial:
>
>> [T]he constitutional validity of a seizure is ordinarily a matter for the court to determine in the context of a pre-trial motion to suppress if counsel elects to file one. La.C.Cr.P. art. 703. This requirement insures that "all disputes over police conduct unrelated to the guilt or innocence of the accused are eliminated from the jury trial' and thereby avoids unwarranted delay and jury confusion." *State v. Christian*, 26,589 (La.App. 2 Cir. 1/25/95), 649 So.2d 806, 808, *writ denied*, 95-0791 (La. 9/15/95), 660 So.2d 448.
>
> 807 So.2d at 219-20. The Court recognized that "with the constitutional validity of the search not at issue, neither

the state nor the defense had any particular need to delve in detail into the circumstances surrounding [the officer's] seizure of the evidence." *Id.* at 221. In the similar case of *State v. Watson*, supra, a police officer testified at trial explaining the circumstances which led to the seizure of drugs and defendant's arrest. The defendant then testified, in contrast to the officer's testimony, that the officers pulled him off his bike, questioned him and beat him before arresting him. The appellate court properly found the defendant was estopped from raising the issue that the evidence should have been suppressed as counsel did not raise the issue in a motion to suppress; however, it reversed the conviction on an ineffective assistance claim. *State v. Watson*, 99-0243 (La.App. 4 Cir. 5/3/00), 763 So.2d 713. This Court reversed, again finding an ineffective assistance claim was better reserved for post-conviction. We explained that a motion to suppress is required so that a full evidentiary hearing can be held to address the issue and that a defendant is not allowed to first bring these claims up after the State has rested its case:

> In this case, the question of the constitutional validity of the seizure of [the evidence] was not at issue in the trial court. Thus, when the State tried this matter, its witnesses were not required to elaborate on why they stopped the defendant. Accordingly, neither the State nor the defendant had any need to scrutinize the detailed circumstances surrounding the seizure of [the evidence] and explore the evidence attendant to that police action. Therefore, the trial testimony of [the officer] focused only on the State's burden to establish beyond a reasonable doubt that the defendant possessed the heroin.

817 So.2d at 84.

That is similar to what happened in this case. Defendant never raised the claim to the trial court in a motion to suppress that the letter should have been suppressed because he asserted his right to counsel when approached by police on Sept. 10 or the police misled him to thinking he did not have a lawyer. Although the burden of proof was on the State on the trial of the motion to prove its admissibility, the defendant must raise all grounds for suppression of the evidence that are

20

knowable or available at that time. The defendant bears this burden in order to give the State adequate notice so that it may present evidence and address the issue at trial on the motion. Because Montejo did not raise these grounds in a motion to suppress or allege facts supporting those grounds, the State had no need to put on evidence tending to show that defendant never made a clear assertion of his right to counsel or that the police never misled him. It simply put on evidence at the motion hearing as required by La.C.Cr.P. art. 703(D) and La. R.S. 15:451 that the letter was admissible, and put on evidence at trial as required by La.C.Cr.P. art. 703(G) concerning the circumstances surrounding the making of the confession or statement for the purpose of enabling the jury to determine the weight to be given the confession or statement. Thus, the officers only testified at the suppression hearing and at trial that basically they asked if he had a lawyer, he said no, and then they read him his rights. It was not until the defendant testified at trial that he told the police he thought he had a lawyer and they told him he did not, that this potential *Edwards* violation and waiver issue was ever even alluded to. The State had no need, and was not required, to rebut this testimony because the evidence had already been admitted and it had never been claimed that the letter was obtained illegally on those grounds. *See State v. Joseph*, 434 So.2d 1057, 1061, n. 3 (La.1983) (where defendant testified at trial that confession was beaten out of him and court had already ruled the statement was admissible in motion to suppress, because that ruling was binding at trial under La.C.Cr.P. art. 703, the state was not obligated to present rebuttal evidence to "rehabilitate" the confession).

As stated earlier, the Supreme Court recognized in remanding the matter that "Montejo's testimony came not at the suppression hearing, but rather only at trial, and we are unsure whether under state law that testimony came too late to affect the propriety of the admission of the evidence." The defendant argues under Louisiana law, in reviewing the trial court's ruling on a defendant's motion to suppress, this Court has stated that it will look to the totality of the evidence presented at the motion to suppress hearing and the trial. *State v. Burkhalter*, 428 So.2d 449, 455 (La.1983); *State v. West*, 408 So.2d 1302, 1308 (La.1982) ("Although the state put on no evidence at the hearing on the motion to suppress, we look to the totality of the evidence produced both at that hearing and at trial when we assess whether the state has carried its

burden"). However, this jurisprudential rule will only be applied where the defendant has filed a motion to suppress alleging a statement was inadmissible on a specific constitutional ground and later a reviewing court looks to his trial testimony, in addition to the testimony presented at the motion hearing, to determine whether the motion to suppress should have been granted on those grounds. The jurisprudential rule is not applied where the grounds for suppression were not asserted in the motion to suppress. We have never allowed a defendant to allege facts for the first time in trial testimony which would support a new argument for suppression of evidence, and have a reviewing court consider those facts in determining whether the district court should have granted a motion to suppress on grounds that were never argued to, or considered by, the district court. This is prohibited by La.C.Cr.P. arts. 703 and 841 and would allow rejection of the district court's determinations at the suppression hearing without any indication of abuse of discretion.

In this case, no motion to suppress was presented to the trial court. Thus, the trial court made no determination on the suppression issues presented in this assignment of error, and the trier of fact was not required to address the issues when determining Defendant's guilt. Conflicting testimony was presented at trial. Therefore, consideration of whether the claims asserted by Defendant would have warranted the granting of a motion to suppress would require this court to make credibility determinations. Moreover, counsel has not been given the opportunity to address or explain whether his failure to file a motion to suppress was trial strategy. *See State v. Bell*, 51,312 (La.App. 2 Cir. 5/17/17), 222 So.3d 79 (consideration of ineffective assistance of counsel arguments was pretermitted and could be raised via application for post-conviction relief where an evidentiary hearing giving counsel the opportunity to explain his trial strategy could be had). For these reasons, we find the issue of ineffective assistance of counsel should be relegated to post-conviction relief.

Defense counsel's failure to object to the evidence presented would not have compounded counsel's ineffective representation as La.Code Crim.P. art. 703(F) provides: "Failure to file a motion to suppress evidence in accordance with this Article prevents the defendant from objecting to its admissibility at the trial on the merits on a ground assertable by a motion to suppress."

*State v. Bonier*, 22-434, pp. 33–37 (La.App. 3 Cir. 3/1/23), 358 So.3d 966, 984–87

(alterations in original).

Likewise, in the present case, no motion to suppress was presented to the trial court.  Thus, the trial court made no determination on the suppression issues presented in this assignment of error, and the trier of fact was not required to address the issues when determining Defendant's guilt.  Furthermore, the State had no need to put on evidence in support of the issuance of a warrant to search Defendant's residence and vehicle.

In fact, the search warrants and their supporting affidavits were included in the record as part of the State's discovery response but were not introduced at trial.  Moreover, there was very little testimony presented at trial as to the information contained in the affidavits.  Without such information, the record is insufficient to evaluate the warrants.  In *State v. Wise*, 05-221, p. 7 (La.App. 5 Cir. 10/6/05), 916 So.2d 290, 293, the fifth circuit found insufficient evidence in the record to review Wise's ineffective assistance of counsel claim even though there was some testimony concerning the warrant:

> There is insufficient evidence in the record to allow this Court to address the merits of the Defendant's ineffective assistance of counsel claim. The search warrants are not part of the record and there was very little testimony regarding the facts that formed the basis for the warrants. Consequently, we find that this issue would be more properly raised in an application for post-conviction relief in the district court, where an evidentiary hearing can be held.

Further, conflicting testimony was presented at trial.  Defendant's witness, Ms. Davis, testified that she arrived at Defendant's residence during the execution of the search warrant, and her vehicle was searched. Ms. Davis also testified that she approached the door of the residence being searched.  Agents Martin and Fulks, however, did not recall searching Ms. Davis's vehicle.  In fact, both testified that neither Ms. Davis nor the woman with her were allowed on the property.  Although this testimony did not directly relate to the search and seizure of

23

Defendant's residence and vehicle, the testimony put the credibility of the State's witnesses at issue. Therefore, consideration of whether the claims asserted by Defendant would have warranted the granting of a motion to suppress may require this court to make credibility determinations.

Here, the trial counsel should have the opportunity to address or explain whether her failure to file a motion to suppress was trial strategy. See *State v. Bell*, 51,312 (La.App. 2 Cir. 5/17/17), 222 So.3d 79, (consideration of ineffective assistance of counsel arguments was pretermitted and could be raised via application for post-conviction relief where an evidentiary hearing giving counsel the opportunity to explain his trial strategy could be had). On March 7, 2023, the State submitted a "Motion (and incorporated memorandum) to Determine Admissibility of Evidence Pursuant to C.E. 404B[.]" The State asserted that it intended to offer at trial evidence of various prior conduct committed by Defendant. The motion was set for a hearing on March 10, 2023. The record does not include a minute entry or transcript of that date, so it is not clear if the motion was heard. As noted above, during defense counsel's cross examination of Agent Martin, the State indicated that Defendant agreed not to attack the search warrant in exchange for the State's agreement not to introduce other crimes evidence. As the State argues in brief, Defendant's trial counsel did not contest the State's assertion regarding the prior agreement. The State further argues that admission of evidence pertaining to Defendant's other crimes "would have been far more damning to the defendant's case than his current appellate claims based on inconsequential alleged deficiencies in the search warrant."

Considering the above, Defendant's ineffective assistance of counsel claim regarding his counsel's failure to file a motion to suppress evidence recovered during the search of his residence is best relegated to post-conviction relief where all parties will be allowed to present evidence at that hearing.

*Search of Vehicle*

Defendant contends that his initial detention at his vehicle was improper because the detention occurred beyond the immediate vicinity of the residence to be searched. Defendant cites *Bailey v. United States*, 568 U.S. 186, 202, 133 S.Ct. 1031, 1043 (2013), which held that "[o]nce an individual has left the immediate vicinity of a premises to be searched . . . detentions must be justified by some other rationale." Defendant further contends that the subsequent "plain-sight" discovery was a direct result of the unlawful detention. Thus, Defendant asserts the agents lacked probable cause to support the search warrant of his vehicle. "At issue," Defendant contends, "is whether the agents had an objective and credible reason to approach the vehicle and detain Swafford."

The State contends that this case is distinguishable from *Bailey* since the agents in the present case did not stop Defendant's vehicle. Defendant, the State contends, "drove his vehicle to a parking spot in front of his place of employment and exited of his own accord[.]" Except for his improper reliance on *Bailey*, the State argues Defendant asserts no other arguments in support of his claim that his detention was illegal.

As for the baggie seen in plain view, the State asserts Defendant presented no facts or argument to show the baggie was illegally seized. Likewise, the State claims Defendant failed to argue that the handcuffing of Defendant constituted an illegal arrest or detention. The State concludes its argument by stating:

The defendant offered no proof that his detention by Agent Fulks was illegal or that the evidence eventually obtained from defendant's pocket or subsequent vehicle search was illegally seized. The defendant's claims that his trial counsel was ineffective in failing to contest the officers' interactions with the defendant is unproven and meritless and should be denied. As with his claim alleging that his attorney was ineffective regarding the residence search affidavit, this claim is also properly raised on post-conviction relief.

*Analysis*

As with the ineffective assistance of counsel claim regarding the search of Defendant's residence, the ineffective assistance of counsel claim regarding Defendant's initial detention at his vehicle is likewise relegated to post-conviction relief. Because Defendant did not file a motion to suppress, the State's witnesses had no need to put on evidence regarding the justification for the initial detention of Defendant, the appropriateness of Defendant's pat down search, and the legality of the agent's subsequent plain-view discovery of narcotics. Moreover, as discussed above, Defendant's trial counsel should be given an opportunity to address or explain whether her failure to file a motion to suppress was trial strategy, and thus is best relegated to post-conviction relief where all parties will be allowed to present evidence at that hearing.

*Failure to Object - Ineffective Assistance of Counsel*

As to appellate counsel's claim that trial counsel's failure to object to certain evidence presented at trial resulted in ineffective assistance of counsel. Louisiana Code of Criminal Procedure Article 703(F) provides: "Failure to file a motion to suppress evidence in accordance with this Article prevents the defendant from objecting to its admissibility at the trial on the merits on a ground assertable by a motion to suppress." Thus, this claim is without merit.

*Conclusion*

In summary, for the foregoing reasons Defendant's claim of ineffective assistance of counsel for failure to object to the admission of evidence at trial is denied. However, Defendant's remaining ineffective assistance of counsel claims are best relegated to post-conviction relief where all parties will be allowed to present evidence.

## **DECREE:**

Defendant's convictions are affirmed. Defendant's claim of ineffective assistance of counsel for failure to object to the admission of evidence at trial is denied. Defendant's remaining ineffective assistance of counsel claims are relegated to post-conviction relief. Defendant's sentence for count two, misdemeanor possession of marijuana weighing less than fourteen grams, is affirmed. Defendant's remaining habitual offender sentences for counts one, three, four, and five, however, are vacated and the matter remanded for a full resentencing hearing. The trial court is instructed that the applicable penalty provision is La.R.S. 15:529.1(4)(B), and that parole eligibility cannot be denied or restricted for any of Defendant's habitual offender sentences.

Finally, the trial court is instructed to amend the minutes of the jury's verdict to correctly reflect the jury's verdict on count two as possession of marijuana weighing more than fourteen grams, and instructed to amend the minutes of sentencing to correctly reflect the sentence imposed for count two as six months in the parish jail.

**CONVICTIONS AFFIRMED; HABITUAL OFFENDER SENTENCES VACATED; CASE REMANDED FOR RESENTENCING, WITH INSTRUCTIONS.**

27